**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
02/26/2021

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | Case No. 20-32307 (DRJ) |
| | (Jointly Administered) |
| Debtors. | |

**ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING THE SOLICITATION PROCEDURES AND SOLICITATION PACKAGES, (C) SCHEDULING A HEARING ON CONFIRMATION OF THE PLAN, (D) ESTABLISHING PROCEDURES FOR OBJECTING TO THE PLAN, (E) APPROVING THE FORM, MANNER, AND SUFFICIENCY OF NOTICE OF THE CONFIRMATION HEARING, AND (F) GRANTING RELATED RELIEF**

[Relates to Docket No. 849]

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases seeking entry of an order (this "Order"), pursuant to sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, and 9006, Local Rules 2002-1, 3016-1, and 9013-1, and the Complex Case Procedures, (a) approving the Disclosure Statement, (b) approving the Solicitation Procedures and Solicitation Packages, (c) scheduling the Confirmation Hearing and approving the form and manner of notice thereof, (d) establishing the Objection Deadline, the Reply Deadline, and related procedures, and (e) granting related relief, all

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.    The Motion is granted to the extent set forth herein.

2.    The Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, and the Debtors are authorized to distribute the Disclosure Statement and Solicitation Packages in order to solicit votes on, and pursue confirmation of, the Plan.  To the extent not withdrawn, settled, or otherwise resolved, any objections to the approval of the Disclosure Statement are hereby overruled.

3.      The Debtors are authorized to make non-material changes to the Disclosure Statement, the Plan, and related documents (including the exhibits, annexes, and appendices thereto and exhibits to this Order) before distributing Solicitation Packages to each creditor or other party-in-interest in accordance with the terms of this Order without further order of the Court, including changes to correct typographical, clerical, and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and related documents (including any exhibits, annexes, and appendices thereto).

4.      The Confirmation Hearing, at which time the Court will consider confirmation of the Plan, will be held before the Honorable David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas, 77002 **on April 8, 2021 at 9:00 a.m. (Prevailing Central Time)**.  The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Confirmation Hearing and notice of such adjourned date(s) will be available on the electronic case filing docket.

5.      Any objections to confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the applicable Bankruptcy Rules and Local Rules; and (e) be filed with the Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be received by **no later than 4:00 p.m. (Prevailing Central Time) on March 30, 2021 (the "<u>Objection Deadline</u>")**, on the following parties:

a.      the Debtors, 15415 Katy Freeway, Houston, Texas 77094 (Attn: General Counsel);

b.     counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Robert A. Britton, and Christopher Hopkins), and (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002 (Attn: John F. Higgins, Eric M. English, and M. Shane Johnson);

c.     counsel to the Ad Hoc Group of Senior Noteholders, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis F. Dunne, Tyson M. Lomazow, and Ryan A. Berger);

d.     counsel to Wells Fargo Bank, National Association, as Prepetition RCF Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Kate Day and William A. (Trey) Wood III);

e.     counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, Texas 75201 (Attn: Marty L. Brimmage, Jr.) and One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff and Philip C. Dublin); and

f.     the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Esq.).

6.     Objections, if any, not timely filed and served in the manner set forth above may, in the Court's discretion, not be considered and may be overruled.

7.     The Debtors shall file their brief in support of confirmation of the Plan and their reply to any objections no later than April 6, 2021.

8.     The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit A**, is approved and shall be deemed good and sufficient notice of the Confirmation Hearing and no further notice need be given; *provided*, that, any provision of Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Plan to Non-Voting Holders, whether because they are unimpaired or because they are deemed to reject the Plan, or any parties-in-interest other than as prescribed in this Order, shall be waived.  The Debtors shall cause the Solicitation Agent to complete service upon (a) all known holders of Claims against and Interests in the Debtors and (b) all Notice Parties, in each case, as of the Voting

Record Date, as described in the Motion, with a copy of the Confirmation Hearing Notice by no later than March 2, 2021 (*i.e.*, within two business days after entry of this Order).

9. The Publication Notice, substantially in the form attached hereto as **Exhibit B**, is approved. The Debtors are authorized, but not directed, in their discretion, pursuant to Bankruptcy Rule 2002(l), to give supplemental publication notice of the Confirmation Hearing no later than 28 days prior to the Confirmation Hearing in the national edition of the *New York Times*, the global edition of the *Financial Times*, and in any other trade or other publications that the Debtors deem prudent in their sole discretion.

10. The following dates and deadlines are hereby established, subject to modification as needed, with respect to the Solicitation Procedures and for objecting to, and confirmation of, the Plan, in each case as discussed further in this Order or the Motion:

| Event | Date |
|---|---|
| **Disclosure Statement Objection Deadline** | February 22, 2021, at 4:00 p.m. (Central Time) |
| **Voting Record Date** | February 24, 2021 |
| **Disclosure Statement Hearing** | February 26, 2021, at 9:30 a.m. (Central Time) |
| **Mailing of Notice of Confirmation Hearing** | As soon as reasonably practicable, but in any event within two business days after entry of the Disclosure Statement Order (expected to be March 2, 2021) |
| **Solicitation Mailing Deadline** | Within four business days after entry of the Disclosure Statement Order (expected to be March 4, 2021) |
| **Voting Resolution Event Deadline** | March 23, 2021 |
| **Plan Supplement Filing** | March 23, 2021 |
| **Voting Deadline** | March 30, 2021, at 4:00 p.m. (Central Time) |
| **Plan Confirmation Objection Deadline** | March 30, 2021, at 4:00 p.m. (Central Time) |
| **Deadline to File Voting Report** | April 2, 2021 |

| Reply Deadline | April 6, 2021 |
| **Confirmation Hearing** | April 8, 2021 at 9:00 a.m. (Central Time) |

11.     The Voting Record Date and the Voting Deadline are approved.  The Voting Record Date shall be **FEBRUARY 24, 2021** for determining (a) the holders of Claims and Interests that are entitled to vote to accept or reject the Plan and (b) whether Claims and Interests have been properly transferred pursuant to Bankruptcy Rule 3001(e) such that the assignee thereof can vote as the holder of such Claim or Interest.  Except as otherwise provided herein, holders of Claims and Interests filed after, or assignees to whom Claims and Interests have purportedly been transferred subsequent to, the Voting Record Date shall not be entitled to vote.

12.     The Ballots substantially in the forms attached hereto as **Exhibits E-1** through **E-7** are approved.

13.     By no later than March 4, 2021 (the "Solicitation Deadline"), the Solicitation Agent shall complete delivery of the materials constituting the Solicitation Packages, the forms of each of which are approved, to the holders in the Voting Classes by first-class, postage prepaid mail.

14.     The Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit F**, is approved and shall be deemed good and sufficient notice of the Confirmation Hearing and no further notice need be given.  The Debtors shall cause the Solicitation Agent to mail a copy of the Notice of Non-Voting Status to the Non-Voting Holders in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 5 (General Unsecured Claims) on or before the Solicitation Deadline.

15.     The Debtors are not required to provide the Non-Voting Holders in Class 6 (Intercompany Claims) and Class 8 (Intercompany Interests) with any type of notice authorized under this Order.

16.     On or before the Solicitation Deadline, the Debtors will also cause the appropriate Solicitation Packages (minus a Ballot) to be served upon the Notice Parties.

17.     Notwithstanding anything herein to the contrary, any party entitled to vote on the Plan that (a) has more than one Claim and/or Interest (whether against the same or multiple Debtors) in the same Voting Class based upon different transactions or (b) has scheduled, filed, or purchased duplicate Claims (whether against the same or multiple Debtors) or Claims against multiple Debtors arising from, based upon, or relating to the same transaction, shall be provided with one Solicitation Package and one Ballot identifying the applicable Claims and/or Interests consistent with the vote tabulation procedures set forth herein.

18.     The Debtors are further authorized, but not directed, in their discretion, to distribute the Solicitation Packages in an electronic format, such as a flash drive, instead of paper format.  If a party who receives a Solicitation Package electronically prefers a paper copy format, the party may request paper copies from the Solicitation Agent free of charge by (a) visiting the Debtors' case website at https://cases.primeclerk.com/diamond, (b) writing to Diamond Ballot Processing c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, or (c) calling the Debtors' restructuring hotline at (929) 955-3417 (Domestic) or (877) 720-6570 (International).  The Plan and Disclosure Statement are also available free of charge on the Debtors' case website at https://cases.primeclerk.com/diamond.

19.     For purposes of serving the Solicitation Package, the Solicitation Agent is authorized to rely on the address information maintained by the Debtors and provided to the

Solicitation Agent.  Any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable" or "moved— no forwarding address" or otherwise returned, unless the Debtors and/or the Solicitation Agent have been informed in writing by such person of that person's new address seven days prior to the Voting Deadline, and any obligation for the Debtors or the Solicitation Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices, is hereby waived.

20.     All Ballots must be properly executed, completed, and returned so that they are **_actually received_** by the Solicitation Agent by no later than the Voting Deadline of **<u>4:00 p.m. (prevailing Central Time) on March 30, 2021</u>**.  The Debtors are authorized to extend the Voting Deadline in their discretion and will include notice of any extension in any voting report tabulating the Ballots and votes received that is filed with the Court.

21.     The Disputed Claim Notice, substantially in the form attached hereto as **<u>Exhibit G</u>**, is approved.

22.     Absent a contrary order of the Court, the following procedures shall determine the amount of the Claim associated with each vote transmitted on a properly executed and timely received Ballot:

    a.   <u>Holders of Claims and Interests Entitled to Vote</u>:  Only Holders of Claims and/or Interests in the Voting Classes shall be entitled to vote on the Plan in respect of their Claims and/or Interests, subject to the procedures set forth herein.

    b.   <u>Class 3 Claims</u>:  The amount of Class 3 RCF Claims for voting purposes only will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record Holders maintained by the RCF Agent, dated as of the Voting Record Date, which shall reflect all outstanding amounts of the applicable positions held by such registered Holders as of the Voting Record Date, as evidenced by the applicable records provided by the RCF Agent to the Debtors or the Solicitation Agent, which records shall be provided no later than one Business Day following the Voting Record Date.  For voting purposes, any and all Proofs of Claim filed on account of Class 3 RCF Claims shall be disregarded.

c. <u>Class 4 Claims</u>:  The amount of Class 4 Senior Notes Claims for voting purposes only will be the amount of the applicable positions such Holder held as of the Voting Record Date as evidenced by the records of the applicable nominee as evidenced by the applicable securities position report(s) from the Depository Trust Company ("<u>DTC</u>") or other applicable depository firm.  For voting purposes, any and all Proofs of Claim filed on account of Class 4 Senior Notes Claims shall be disregarded.

d. <u>Class 7 Interests</u>:  The amount of Class 7 Existing Parent Equity Interests of directly registered and Beneficial Holders[3] for voting purposes only will be established through the Debtors' applicable books and records or applicable nominees, as the case may be, in the amount of the applicable positions held by such registered Holders as of the Voting Record Date, as evidenced by the Debtors' applicable books and records or by the records of the applicable nominee as evidenced by the applicable securities position report(s) from DTC or other applicable depository firm.  For voting purposes, any and all Proofs of Claim filed on account of Class 7 Existing Parent Equity Interests shall be disregarded.

e. <u>All Other Filed and Scheduled Claims (to the extent applicable)</u>:

i. the amount of the Claim settled and/or agreed upon by the Debtors, as reflected in a court pleading, stipulation, agreement, or other document filed with the Court, in an order of the Court, or in a document executed by the Debtors pursuant to authority granted by the Court;

ii. the amount of the Claim determined through a Voting Resolution Event (as defined herein) in accordance with the resolution procedures set forth herein;

iii. the amount of the Claim listed in a timely filed Proof of Claim as not contingent, not unliquidated, and not disputed (except for any amounts asserted on account of interest accrued after the Petition Date), if such Claim is not subject to an objection filed in the Court[4] on or before March 16, 2021; *provided*, *however*, that a timely filed Proof of Claim asserting a wholly contingent, wholly unliquidated, and/or wholly disputed amount (as determined by the Debtors) shall vote in the amount of $1.00;

iv. the amount of the Claim listed in the Schedules as not contingent, not unliquidated, and not disputed as of the Voting Record Date; *provided*, *however*, that a Claim listed in the Schedules as contingent, unliquidated, or

---

[3] A "Beneficial Holder" means a beneficial owner of publicly traded securities whose claims have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the applicable broker, bank, or other nominee holding through the respective indenture trustee.

[4] If the Debtors file an objection to reduce and allow a Claim, the Claim shall vote in the reduced amount.  If the Debtors file an objection to reclassify a Claim, the Claim shall be treated for solicitation and tabulation purposes as that reclassified Claim, which may include being moved out of one of the Voting Classes.

disputed for which the applicable bar date has not yet passed, including the Governmental Bar Date, shall vote in the amount of $1.00 (solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code); and

v.   in the absence of any of the foregoing, $1.00.

23.   Holders of Claims that are not entitled to vote on the Plan pursuant to the procedures described immediately above shall be permitted to vote such Claim (or to vote such Claim in an amount other than the amount set forth in the Schedules) only if one of the following shall have occurred with respect to such claim (a "Voting Resolution Event") on or before the Voting Resolution Event Deadline of **March 23, 2021**:

a.   Agreement Between the Parties.  A stipulation or other agreement is executed between the holder of such Claim and the Debtors allowing the holder of such Claim to vote such Claim in an agreed upon amount.

b.   Bankruptcy Rule 3018(a) Order.  A creditor files with the Court a motion pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018(a) Motion") on or before the Voting Resolution Event Deadline seeking temporary Allowance of its Claim for voting purposes in the amount other than set forth in the Schedules or in response to an objection filed by the Debtors that is sustained by the Court after notice and a hearing.

Any Rule 3018(a) Motion must: (i) be made in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) set forth the name of the party asserting the Rule 3018(a) Motion, (iv) state with particularity the legal and factual bases for the Rule 3018(a) Motion, (v) be set for hearing at the Confirmation Hearing, and (vi) be served by personal service, overnight delivery, first class mail, or facsimile so as to be received by the Notice Parties no later than the Voting Resolution Event Deadline.

In the event that the Debtors and such party are unable to resolve any issues raised by the Rule 3018(a) Motion before submitting their voting certification, (i) the Debtors may object to the Rule 3018(a) Motion before the Confirmation Hearing; and (ii) the Solicitation Agent shall tabulate the vote in the amount as directed by the Debtors and shall include in the voting certification representations that such vote was subject to a Rule 3018(a) Motion and whether including such Ballot in the amount sought by the party in the Rule 3018(a) Motion would change the particular Voting Class's acceptance or rejection of the Plan.  The Court then shall determine at the Confirmation Hearing whether the Ballot should be counted as a vote on the Plan and in what amount.

      c.      <u>Other Order of the Court</u>.  The Court otherwise orders the allowance of such Claim for purposes of voting to accept or reject the Plan.

24.      Within one business day after the Voting Resolution Event Deadline, the Solicitation Agent shall provide the respective claimant a Solicitation Package, including a Ballot. Such claimant must then return a duly completed, properly executed Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline (unless the Debtors extend the deadline in their sole discretion to facilitate a reasonable opportunity for such creditor to vote on the Plan).

25.      With respect to Master Ballot and Beneficial Holder Ballot submissions for holders of Class 4 Senior Notes Claims and Class 7 Existing Parent Equity Interests, the following voting process and tabulation rules will apply:

      a.      the Solicitation Agent shall distribute or cause to be distributed through the applicable nominees the appropriate number of copies of the Beneficial Holder Ballots for Senior Notes Claims and Existing Parent Equity Interests, as applicable, as of the Voting Record Date;

      b.      nominees identified by the Solicitation Agent as Entities through which beneficial holders hold their Senior Notes Claims or Existing Parent Equity Interests, as applicable, will be provided with (i) Solicitation Packages for each beneficial holder represented by the nominee as of the Voting Record Date, which will contain, among other things, a Beneficial Holder Ballot for each beneficial holder, and (ii) a Master Ballot;

      c.      any nominee that is a holder of record with respect to Senior Notes Claims or Existing Parent Equity Interests, as applicable, shall vote on behalf of, or facilitate voting by, beneficial holders of such Claims, as applicable, either by (i) (a) immediately, and in any event within five business days after its receipt of the Solicitation Packages, distributing the Solicitation Packages, including Beneficial Holder Ballots, it receives from the Solicitation Agent to all such beneficial holders;[5] (b) providing such beneficial holders with a return address to send the completed Beneficial Holder Ballots; (c) compiling and validating the

---

[5]    Solicitation Packages may be sent in paper format or via electronic transmission in accordance with the customary requirements of each nominee.  Each nominee will then distribute the Solicitation Packages, as appropriate, in accordance with their customary practices and obtain votes to accept or reject the Plan also in accordance with their customary practices.  If it is the nominee's customary and accepted practice to submit a "voting instruction form" to the beneficial holders for the purpose of recording the beneficial holder's vote, the nominee will be authorized to send the voting instruction form in lieu of, or in addition to, a Beneficial Holder Ballot.

votes and other relevant information of all such beneficial holders on the Master Ballot; and (d) transmitting the Master Ballot to the Solicitation Agent so that it is received no later than the Voting Deadline, or (ii) if the nominee elects to "pre-validate" the Beneficial Holder Ballots, immediately, and in any event, within five business days after receipt of the Solicitation Packages, distributing the Solicitation Packages it receives from the Solicitation Agent to all such beneficial holders, including in each package a Beneficial Holder Ballot that it has "pre-validated",[6] and a return envelope provided by and addressed to the Solicitation Agent, so that the beneficial holder may complete and return the pre-validated Beneficial Holder Ballot directly to the Solicitation Agent so that it is received no later than the Voting Deadline;

d.      with respect to Senior Notes Claims, the Senior Notes Trustee will not be entitled to vote on behalf of a beneficial holder; rather, each beneficial holder must vote his or her own Senior Notes Claim(s) through its nominee;

e.      any Beneficial Holder Ballot returned to a nominee by a beneficial holder shall not be counted for purposes of accepting or rejecting the Plan until such nominee properly completes and delivers to the Solicitation Agent a Master Ballot that reflects the vote of such beneficial holders so that it is received no later than the Voting Deadline or otherwise validates the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent.  Nominees shall retain all Beneficial Holder Ballots returned by beneficial holders for a period of one year after the Effective Date of the Plan;

f.      if a beneficial holder holds a Senior Notes Claim or an Existing Parent Equity Interest, as applicable, through more than one nominee or through multiple accounts, such beneficial holder may receive more than one Beneficial Holder Ballot and each such beneficial holder should execute a separate Beneficial Holder Ballot for each block of Senior Notes Claims or Existing Parent Equity Interests, as applicable, that it holds through any nominee and must return each such Beneficial Holder Ballot to the appropriate nominee;

g.      votes cast by beneficial holders through nominees will be applied to the applicable positions held by such nominees in Senior Notes Claims or Existing Parent Equity Interests, as applicable, as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from the DTC.  Votes submitted by a nominee pursuant to a Master Ballot will not be counted in excess of the amount of such Claims or Interests, as applicable, held by such nominee as of the Voting Record Date;

---

[6]     A nominee "pre-validates" a Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including its DTC participant number and a medallion guarantee stamp validating the beneficial holder's position as of the Voting Record Date, indicating the account number of the beneficial holder and the principal amount of Senior Notes Claims or the number of shares of Existing Parent Equity Interests, as applicable, held by the nominee for such beneficial holder.

h.       if conflicting votes or "over-votes" are submitted by a nominee pursuant to a Master Ballot, the Debtors will use reasonable efforts to reconcile discrepancies with the nominees.   If over-votes on a Master Ballot are not reconciled before the preparation of the voting report tabulating votes on the Plan, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the nominee's position in Senior Notes Claims;

i.       to assist in the solicitation process, the Solicitation Agent may, but is not required to, contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; provided, however, that the Solicitation Agent is not obligated to do so;

j.       with respect to Senior Notes Claims, for purposes of tabulating votes, each nominee or beneficial holder will be deemed to have voted the principal amount of its Claims in Senior Notes Claims although any principal amounts may be adjusted by the Solicitation Agent to reflect the amount of the Claim actually voted, including prepetition interest;

k.       a single nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot.  Likewise, if a beneficial holder submits more than one Beneficial Holder Ballot to its nominee, (i) the latest received Beneficial Holder Ballot received before the submission deadline imposed by the nominee shall be deemed to supersede any prior Beneficial Holder Ballot submitted by the beneficial holder, and (ii) the nominee shall complete the Master Ballot accordingly; and

l.       the Debtors will, upon written request, reimburse nominees for customary mailing and handling expenses incurred by them in forwarding the Beneficial Holder Ballot and other enclosed materials to the beneficial holders for which they are the nominee.  No fees or commissions or other remuneration will be payable to any broker, dealer, or other person for soliciting Beneficial Holder Ballots with respect to the Plan.

26.       The procedures used for the tabulation of votes to accept or reject the Plan as set forth in the Motion and included in the Ballots, including (a) with respect to the Master Ballots and the Beneficial Holder Ballots and (b) authorization for the Debtors to (i) accept electronic Ballots that are electronically signed and submitted by voting holders through the Solicitation Agent's online balloting portal (which allows a holder to submit an electronic

signature) and (ii) accept provisional Ballots, if necessary, in each case as described in the Motion and set forth in the Ballots, are hereby approved.

27.     The Solicitation Agent shall file its voting certification with the Court on or before **four days before** the Confirmation Hearing.  The Debtors shall cause such certification to be served upon all parties entitled to notice under Bankruptcy Rule 2002(b) and posted on the website maintained by the Solicitation Agent as soon as such certification is filed.

28.     The form of Rejection Notice, substantially in the form attached hereto in **Exhibit C**, is approved.

29.     The form of Cure Notice, substantially in the form attached hereto in **Exhibit D**, is approved.

30.     The notice procedures set forth herein constitute good and sufficient notice of the Confirmation Hearing and the deadline and procedures for objecting to confirmation of the Plan, and no other or further notice shall be necessary.

31.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Local Rules are satisfied by such notice.

33.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

34.     Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

35.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  February 26, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## Exhibit A

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**NOTICE OF HEARING
TO CONSIDER CONFIRMATION OF THE JOINT CHAPTER 11 PLAN
FILED BY THE DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**TO:   ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS
AND PARTIES-IN-INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT:**

1.      On [●], 2021, Diamond Offshore Drilling, Inc. and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Plan"), and a disclosure statement for the Plan [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Disclosure Statement")[2] pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code [Docket No. [●]].

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

2.      Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' solicitation agent, Prime Clerk LLC (the "Solicitation Agent"), at https://cases.primeclerk.com/diamond.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (877) 720-6570 (International) or (929) 955-3417 (Domestic), or sending an electronic mail message to the Solicitation Agent at diamondinfo@primeclerk.com.  A chart summarizing the treatment provided by the Plan to each class of Claims and Interests is set forth below.

3.      Only Holders of RCF Claims (Class 3), Senior Notes Claims (Class 4), and Existing Parent Equity Interests (Class 7) are entitled to vote to accept or reject the Plan.  All other classes of Claims and Interests are deemed either to accept or reject the Plan.

4.      On or before March 4, 2021, the Debtors will complete the mailing of the solicitation packages to solicit votes to accept the Plan from the Holders of Claims in Class 3, Class 4, and Class 7 each of record as of February 24, 2021.  **The deadline for the submission of votes to accept or reject the Plan is at 4:00 p.m. (prevailing Central Time) on March 30, 2021, unless such time is extended by the Debtors.**

### Non-Voting Status of Holders of Certain Claims and Interests

5.      Certain holders of Claims and Interests are **not** entitled to vote on the Plan.  As a result, such parties will not receive any ballots or other related solicitation materials to vote on the Plan.  The holders of Claims and Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 8 (Intercompany Interests) are deemed either to accept or reject the Plan.

### Confirmation Hearing

6.      A hearing to consider confirmation of the Plan, and any objections thereto, will be held on **April 8, 2021, at 9:00 a.m. (prevailing Central Time)** before the Honorable David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002, or as soon thereafter as counsel may be heard (the "Confirmation Hearing").[3]

7.      The Confirmation Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Confirmation Hearing, and notice of such adjourned date(s) will be available on the electronic case filing docket and the Debtors' website at https://cases.primeclerk.com/diamond.

8.      Any objections to confirmation of the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the

---

[3]      Pursuant to the Protocol for Emergency Public Health or Safety Conditions (adopted by General Order 2020-4 and thereafter amended and extended from time to time), all hearings are currently being held by video/audio platforms.  Parties should consult the Court's website at www.txs.uscourts.gov to confirm the method and procedures for appearance at any hearing.

applicable Bankruptcy Rules and Local Rules; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than March 30, 2021 at 4:00 p.m. (prevailing Central Time)** (the "Objection Deadline"):

a.   the Debtors, 15415 Katy Freeway, Houston, Texas 77094 (Attn: General Counsel);

b.   counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Robert A. Britton, and Christopher Hopkins), and (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002 (Attn: John F. Higgins, Eric M. English, and M. Shane Johnson);

c.   counsel to the Ad Hoc Group of Senior Noteholders, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis F. Dunne, Tyson M. Lomazow, and Ryan A. Berger);

d.   counsel to Wells Fargo Bank, National Association, as Prepetition RCF Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Kate Day and William A. (Trey) Wood III);

e.   counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street., Suite 1800, Dallas, Texas 75201 (Attn: Marty L. Brimmage, Jr.) and One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff and Philip C. Dublin); and

f.   the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Esq.).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE (THIS "NOTICE"), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON ALL OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS. FAILURE TO FILE A TIMELY OBJECTION TO THE PLAN OR, WITH RESPECT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, TO TIMELY OPT OUT VIA BALLOT OR OPT-OUT NOTICE, AS APPLICABLE, WILL RESULT, IF THE PLAN IS CONFIRMED, IN THE APPLICATION OF THE PROVISIONS SET FORTH BELOW, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED THEREIN, TO EACH OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS.**

### Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures

9.      In accordance with Article V of the Plan, and in accordance with sections 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective

Date and the payment of any applicable Cure Claims, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party, and which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed, except for any Executory Contract or Unexpired Lease that (a) is identified on the Schedule of Rejected Contracts, (b) has been previously rejected by a Final Order, (c) is the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date, (d) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date, or (e) is otherwise rejected pursuant to the terms of the Plan. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections of Executory Contracts and Unexpired Leases provided for in the Plan, the Confirmation Order or the Schedule of Rejected Contracts, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

10.     The Debtors do not intend to serve copies of the list of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned pursuant to the Plan on all parties-in-interest in these Chapter 11 Cases.  The Debtors will send Cure Notices advising applicable counterparties to Executory Contracts and Unexpired Leases that their respective contracts or leases are being assumed or assumed and assigned and the proposed Cure Amount no later than fourteen (14) days prior to the Confirmation Hearing.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, assumption and assignment, or related Cure Amount, must be filed, served, and actually received by the Debtors by the Objection Deadline in accordance with the procedures set forth above and in the Cure Notices.

## **Information Regarding the Plan**[4]

11.     The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class:

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Other Secured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that such Holder agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Other Secured Claim, at the option of the Reorganized Debtors (subject to the reasonable consent of the Requisite Consenting Stakeholders), each such Holder of an Allowed Other Secured Claim shall receive (i) payment in full in Cash, or (ii) such other treatment so as to render such Holder's Allowed Other Secured Claim Unimpaired. | Unimpaired | No (Presumed to Accept) |
| 2 | Other Priority Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that such | Unimpaired | No (Presumed to Accept) |

---

[4]     The descriptions contained herein are summaries of provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| | | Holder agrees to a less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, at the option of the Debtors (subject to the reasonable consent of the Requisite Consenting Stakeholders), in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claim, (i) payment in Cash of the unpaid portion of its Allowed Other Priority Claim or (ii) other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. | | |
| 3 | RCF Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that such Holder agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such RCF Claim, each Holder of an Allowed RCF Claim shall receive, either: (i) if such Holder elects to participate in the Exit Revolving Credit Facility, (A) first, its Participating RCF Lender Share of the RCF Cash Paydown; (B) second, to the extent such Holder's RCF Claims have not been satisfied in full after the application of the RCF Cash Paydown under clause (A) above, its Participating RCF Lender Share of up to $100 million of funded loans under the Exit Revolving Credit Facility, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[5]; and (C) third, to the extent such Holder's RCF Claims have not been satisfied in full after the application of the RCF Cash Paydown under clause (A) above and the allocation of funded loans under clause (B) above, a share of $200 million (less the amount of aggregate funded loans under the Exit Revolving Credit Facility on the Effective Date allocated pursuant to clause (B) above) of the Exit Term Loan Facility that is equal to the remaining unsatisfied amount of such Holder's RCF Claims, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[6], provided that the aggregate amount of any such Holder's shares of the amounts described in the foregoing clauses (A), (B), and (C) shall not exceed the amount of such Holder's RCF | Impaired | Yes |

---

[5]     Amounts determined assuming an April 23, 2021 emergence date.

[6]     Amounts determined assuming an April 23, 2021 emergence date.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| | | Claims; or; or (ii) if such Holder does not elect to participate in the Exit Revolving Credit Facility, (A) first, a share of $200 million, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[7] (less the amount of aggregate funded loans under the Exit Revolving Credit Facility on the Effective Date allocated pursuant to clause (i)(B) above) of the Exit Term Loan Facility that is equal to the lesser of (x) its RCF Claims and (y) its Non-Participating RCF Lender Share of the portion of the $200 million, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[8], of the Exit Term Loan Facility that is not allocated to participating Holders pursuant to clause (i)(C) above and (B) second, solely to the extent such Holder's RCF Claims have not been satisfied in full after the allocation of the Exit Term Loan Facility under clause (A) above, a portion of the RCF Cash Paydown equal to the lesser of (x) such Holder's remaining unsatisfied RCF Claims and (y) such Holder's Non-Participating RCF Lender Share of the amount of the RCF Cash Paydown that has not been allocated to the participating RCF Lenders pursuant to clause (i)(A) above. | | |
| 4 | Senior Notes Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that such Holder agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Senior Notes Claim, each Holder of an Allowed Senior Notes Claim shall receive (i) its Pro Rata share of 70.0% of the New Diamond Common Shares, subject to dilution by the New Warrants and the MIP Equity Shares; and (ii) Subscription Rights to participate in the Rights Offerings to (a) pursuant to the Primary Rights Offering, purchase such Holder's Pro Rata portion of $46,875,000 of Exit Notes and 12.26% of the issued and outstanding New Diamond Common Shares as of the Effective Date, subject to dilution by the New Warrants and the MIP Equity Shares and (b) pursuant to the Delayed Draw Rights Offering, subscribe for such Holder's Pro Rata portion of commitments to purchase up to $21,875,000 of Delayed Draw Notes and 5.72% of the total New Diamond Common Shares outstanding on the Effective Date, subject to dilution by the New | Impaired | Yes |

---

[7]     Amounts determined assuming an April 23, 2021 emergence date.

[8]     Amounts determined assuming an April 23, 2021 emergence date.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| | | Warrants and the MIP Equity Shares. With respect to subsection (ii) above, pursuant to, and in accordance with, the Backstop Agreement and the Rights Offerings Procedures, each Financing Party has agreed to, severally and not jointly, (i) fully exercise all Subscription Rights that are properly issued to it on the applicable Subscription Commencement Date on account of its Allowed Senior Notes Claims and (ii) duly purchase all Exit Notes on account of its Allowed Senior Notes Claims. | | |
| 5 | General Unsecured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that such Holder agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such General Unsecured Claims, each Holder of an Allowed General Unsecured Claim shall receive, at the option of the Debtors (subject to the reasonable consent of the Requisite Consenting Stakeholders): (i) payment in full in Cash (inclusive of post-petition interest at (a) the Federal Judgment Rate, (b) any applicable contract rate solely to the extent such rate applies, or (c) such other rate as agreed to among the Debtors and such Holder or as determined by the Bankruptcy Court (in any adversary proceeding, contested matter, or otherwise), on the later of (w) the Effective Date or as soon as reasonably practicable thereafter, (x) the date such Claim becomes Allowed or as soon as reasonably practicable thereafter, (y) the date such Claim comes due under applicable Law or in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Claim, or (z) such other date as agreed between the Debtors or the Reorganized Debtors and such Holder; (ii) Reinstatement; or (iii) such other treatment sufficient to render such Claims Unimpaired. General Unsecured Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. | Unimpaired | No (Presumed to Accept) |
| 6 | Intercompany Claims | On the Effective Date, all Intercompany Claims shall be adjusted, Reinstated, or discharged at the Debtors' discretion, in consultation with the Ad Hoc Group (subject to the reasonable consent of the Requisite Consenting Stakeholders). | Unimpaired / Impaired | No (Presumed to Accept/ Deemed to Reject) |
| 7 | Existing Parent Equity Interests | On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Existing Parent Equity Interest will receive its Pro | Impaired | Yes |

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|-------|---------------------|-----------|------------------------|---------------------|
| | | Rata share of the New Warrants, subject to dilution by the MIP Equity Shares. | | |
| 8 | Intercompany Interests | On the Effective Date, all Intercompany Interests shall be (i) cancelled (or otherwise eliminated) and receive no distribution under the Plan or (ii) Reinstated at the Debtors' option, in consultation with the Ad Hoc Group (subject to the reasonable consent of the Requisite Consenting Stakeholders). To the extent Reinstated, Intercompany Interests are Unimpaired solely to preserve the Debtors' corporate structure, and Holders of such Intercompany Interests shall not otherwise receive or retain any property on account of such Intercompany Interests. | Unimpaired / Impaired | No (Presumed to Accept/ Deemed to Reject) |

## Important Information Regarding the Discharges, Injunctions, Exculpations, and Releases

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth in the Plan, or (iii) vote to reject the Plan but do not opt out of granting the releases set forth in Plan, you shall be deemed to have consented to the releases contained in Article VIII.D of the Plan.**

**Article VIII.C          Debtor Release**

Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's Representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual relationship between any Debtor and any Released Party,

the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the New Warrants, or the Plan, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, or (d) any Preserved Causes of Action set forth in the Plan Supplement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtor Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases.

**Article VIII.D          Third-Party Release**

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code , in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, and

hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever, released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual relationship between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Rights Offerings, the Private Placements, the Exit Facilities, the Backstop Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the New Warrants, the Plan or the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, (d) the rights of any current employee of the Debtors under any employment agreement or plan, or (e) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released

by the Third-Party Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases.

**Article VIII.E**     **Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement and related prepetition transactions (including any draws under or Claims or Causes of Action related to the RCF Credit Agreement), the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the Plan, the Plan Supplement, the New Warrants, or any transaction related to the Restructuring, any contract, instrument, release or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with applicable Law with respect to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**Article VIII.F.**     **Injunction**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to the Plan.

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order,

all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

1. commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

2. enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

3. creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

4. asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and

5. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan or the Confirmation Order.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan, the Confirmation Order or under any other Restructuring Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan and the Confirmation Order from bringing an action to enforce the terms of the Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan and the Confirmation Order.  The injunction in the Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

**Article VIII.G**          <u>**Waiver of Statutory Limitations on Releases**</u>

Each Releasing Party in each of the releases contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have

**materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party, including the provisions of California Civil Code Section 1542.  The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

<u>Relevant Definitions Related to Release, Exculpation and Injunction Provisions</u>

"<u>Exculpated Parties</u>" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Committee and its members; (d) the parties to the Plan Support Agreement; and (e) the Senior Notes Trustee (solely to the extent acting in the capacity as Disbursing Agent), and (f) with respect to each of the foregoing Persons in clauses (a) through (e), each of their current and former Affiliates; and (f) with respect to each of the foregoing Persons in clauses (a) through (f), such Person's predecessors, successors, assigns, subsidiaries, Affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"<u>Released Parties</u>" means, each of and collectively, (a) the Debtors and the Reorganized Debtors, (b) the Consenting Stakeholders, (c) the Ad Hoc Group and each of its members, (d) the Senior Notes Trustee, (e) the Financing Parties, (f) the RCF Agent and the RCF Lenders, (g) the Exit Agents, the Exit Revolving Credit Facility Lenders, the Exit Term Loan Lenders and the Exit Noteholders; (h) any Releasing Party, (i) the Committee and each of its members, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their current and former Affiliates, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), such Person's predecessors, successors, assigns, subsidiaries, current and former Affiliates, current and former officers and directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, managed accounts or funds, management companies, fund advisors, financial advisors, advisory board members, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees and any and all other persons or entities that may purport to assert any Cause of Action derivatively, by or through the foregoing, in each case in their capacity as such.

"<u>Releasing Parties</u>" means, collectively, (a) the Holders of all Claims or Interests who vote to accept the Plan, (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited, or that otherwise receive notice of the opportunity to opt out of granting the releases set forth in the Plan, that vote to reject or abstain from voting and do not opt out of granting the releases under the Plan, (c) the Holders of all Claims or Interests that are conclusively presumed to accept, and do not opt out of granting the releases under the Plan, (d) the Holders of all Claims

or Interests who are deemed to reject the Plan and do not opt out of granting the releases under the Plan, (e) the Consenting Stakeholders, (f) the Ad Hoc Group and each of its members, (g) the Senior Notes Trustee, (h) the Financing Parties, (i) the RCF Agent and each of the RCF Lenders, (j) the Committee and each of its members (solely in their capacity as such), (k) any Released Party, (l) with respect to each of the foregoing Persons, in clauses (a) through (k), each of their current and former Affiliates, and (m) with respect to each of the foregoing Persons in clauses (a) through (l), such Person's predecessors, successors, assigns, subsidiaries, current and former Affiliates, current and former officers and directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both limited and general partners), managers, employees, agents, managed accounts or funds, management companies, fund advisors, financial advisors, advisory board members, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, and any and all other persons or entities that may purport to assert any Cause of Action derivatively, by or through the foregoing in each case in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

[*Remainder of page intentionally left blank*]

Dated:      [●], 2021

By: _____

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com

*Co-Counsel to the Debtors and the Debtors-in-Possession*

– and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
Shamara R. James (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
pbasta@paulweiss.com
rbritton@paulweiss.com
chopkins@paulweiss.com
anofzinger@paulweiss.com
sjames@paulweiss.com

*Counsel to the Debtors and
the Debtors-in-Possession*

---

If you have questions about this Notice, please contact:
Prime Clerk LLC
**Telephone**: (929) 955-3417 (Domestic) or (877) 720-6570 (International)
**Website**: https://cases.primeclerk.com/diamond
**Email**:  diamondinfo@primeclerk.com

---

## Exhibit B

**Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | |
|---|---|
| In re: DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] Debtors. | Chapter 11, Case No. 20-32307 (DRJ) (Jointly Administered) |

**NOTICE OF HEARING ON CONFIRMATION OF JOINT PLAN OF REORGANIZATION**

**TO: ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES-IN-INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

   **PLEASE TAKE NOTICE THAT** on [●], 2021, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Plan"),[2] and a disclosure statement for the Plan [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Disclosure Statement") pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code [Docket No. [●]]. Copies of the Plan and Disclosure Statement may be obtained free of charge by visiting the website maintained by the Solicitation Agent, Prime Clerk LLC, at https://cases.primeclerk.com/diamond. Copies of the Plan and Disclosure Statement may also be obtained by calling (929) 955-3417 (Domestic) or (877) 720-6570 (International).

   **PLEASE TAKE FURTHER NOTICE THAT** on or before March 4, 2021, the Debtors will complete the mailing of the solicitation packages to solicit votes to accept the Plan from the Holders of Claims and Interests in Class 3 (RCF Claims), Class 4 (Senior Notes Claims), and Class 7 (Existing Parent Equity Interests) as of February 24, 2021 (the "Voting Record Date") via physical mail and/or electronic transmission. Only holders of Claims and Interests in Class 3, Class 4, and Class 7 are entitled to vote to accept or reject the Plan. All other classes of Claims and Interests are deemed either to accept or reject the Plan and, therefore, are not entitled to vote. **The deadline for the submission of votes to accept or reject the Plan is March 30, 2021 at 4:00 p.m. (Prevailing Central Time).**

   **PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Confirmation Hearing") to consider confirmation of the Plan, and any objections thereto, will be held on **April 8, 2021, at 9:00 a.m. (prevailing Central Time)** before the Honorable David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002.[3] The Confirmation Hearing may be adjourned from time to time without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or an announcement of the adjourned date or dates at the Confirmation Hearing. The adjourned date or dates will be available on the electronic case filing docket and the Solicitation Agent's website at https://cases.primeclerk.com/diamond.

   **PLEASE TAKE FURTHER NOTICE THAT** any objections to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection (d) conform to the applicable Bankruptcy Rules and Local Rules; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than March 30, 2021 at 4:00 p.m. (prevailing Central Time)**

(the "Objection Deadline"): (a) **the Debtors**, c/o Diamond Offshore Drilling, Inc., 15415 Katy Freeway, Houston, Texas 77094 (Attn: General Counsel); (ii) **counsel to the Debtors**, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Robert A. Britton, and Christopher Hopkins), and (b) Porter Hedges LLP, 1000 Main Street, Houston, Texas 77002 (Attn: John F. Higgins, Eric M. English, and M. Shane Johnson); (c) **counsel to the Ad Hoc Group of Senior Noteholders**, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis F. Dunne, Tyson M. Lomazow, and Ryan A. Berger); (d) **counsel to Wells Fargo Bank, National Association, as Prepetition RCF Agent**, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Kate Day and William A. (Trey) Wood III); (e) **counsel to the Committee**, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Filed Street, Suite 1800, Dallas, Texas 75201 (Attn: Marty L. Brimmage, Jr.) and One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff and Philip C. Dublin.); and (f) **the U.S. Trustee**, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Esq.).

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**CRITICAL INFORMATION REGARDING OBJECTIONS TO THE PLAN.** ARTICLE VIII OF THE PLAN CONTAINS DISCHARGE, INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN, OR (C) VOTE TO REJECT THE PLAN BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN.**

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at: https://cases.primeclerk.com/diamond. The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

[3] Pursuant to the Protocol for Emergency Public Health or Safety Conditions (adopted by General Order 2020-4 and thereafter amended and extended from time to time), all hearings are currently being held by video/audio platforms. Parties should consult the Court's website at www.txs.uscourts.gov to confirm the method and procedures for appearance at any hearing.

**Exhibit C**

**Rejection Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | Case No. 20-32307 (DRJ) |
| | (Jointly Administered) |
| Debtors. | |

**NOTICE OF REJECTION OF
EXECUTORY CONTRACT OR UNEXPIRED LEASE**

**PLEASE TAKE NOTICE THAT:**

1.      On [●], 2021, Diamond Offshore Drilling, Inc. and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Plan"), and a disclosure statement for the Plan [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Disclosure Statement")[2] pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code [Docket No. [●]].

2.      In accordance with Article V of the Plan, and in accordance with sections 365 and 1123 of the Bankruptcy Code, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party, and which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed except for any Executory Contract or Unexpired Lease that (a) is identified on the Schedule of Rejected Contracts filed with the Plan Supplement, (b) has been previously rejected by a Final Order, (c) is the subject of a motion to reject Executory

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

Contracts or Unexpired Leases that is pending on the Confirmation Date, or (d) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections of Executory Contracts and Unexpired Leases provided for in the Plan or the Schedule of Rejected Contacts, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  All Executory Contracts and Unexpired Leases listed on the Rejection Schedule will be deemed rejected as of the Effective Date.

       3.      You are receiving this notice (this "Notice") because the Debtors' records reflect that you are a party to an Executory Contract or Unexpired Lease that is listed on the Schedule of Rejected Contracts, a copy of which is attached hereto as **Exhibit 1**.  Therefore, you are advised to carefully review the information contained in this Notice and the related provisions of the Plan, including the Schedule of Rejected Contracts.

       4.      The Debtors, subject to the terms of the Plan, reserve the right to alter, amend, modify, or supplement any information set forth herein, including to add or delete any Executory Contract or Unexpired Lease set forth on the Schedule of Rejected Contracts, at any time up to and including the Effective Date.  As such, the Rejection Schedule is not final, and is subject to ongoing review.

       5.      Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the date of the Order of the Bankruptcy Court approving such rejection.  Any Claims arising from the rejection of any Executory Contracts and Unexpired Leases that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or the property of the foregoing parties, without the need for any objection by the Debtors or Reorganized Debtors, as applicable, or further notice to, or action, Order, or approval of the Bankruptcy Court or any other Entity, and any Claims arising out of the rejection of such Executory Contracts and Unexpired Leases shall be deemed fully satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary, and all such Claims will be subject to the injunction set forth in Article VIII.F of the Plan.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims, and shall be treated in accordance with Article III of the Plan; provided that post-petition interest shall accrue on such Rejection Damages Claim at (i) the Federal Judgment Rate, (ii) any applicable contract rate solely to the extent such rate applies, or (iii) such other rate as agreed to among the Debtors and such Holder or as determined by the Bankruptcy Court (in any adversary proceeding, contested matter, or otherwise) solely for the period (a) commencing on the effective date of the rejection as set forth in the applicable Order of the Bankruptcy Court approving such rejection and (b) ending on the date such Rejection Damages Claim is satisfied in full in accordance with Article III of the Plan.

       6.      A hearing to consider confirmation of the Plan, and any objections thereto, will be held on **April 8, 2021, at 9:00 a.m. (prevailing Central Time)** before the Honorable David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court,

515 Rusk Avenue, Houston, Texas 77002, or as soon thereafter as counsel may be heard (the "Confirmation Hearing").[3]

7.      Any objections to confirmation of the Plan, including any objection to the Debtors' decision to reject an Executory Contract or Unexpired Lease pursuant to the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the applicable Bankruptcy Rules and Local Rules; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than March 30, at 4:00 p.m. (prevailing Central Time)** (the "Objection Deadline"):

    a.   the Debtors, 15415 Katy Freeway, Houston, Texas 77094 (Attn: General Counsel);

    b.   counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Robert A. Britton, and Christopher Hopkins), and (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002 (Attn: John F. Higgins, Eric M. English, and M. Shane Johnson);

    c.   counsel to the Ad Hoc Group of Senior Noteholders, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis F. Dunne, Tyson M. Lomazow, and Ryan A. Berger);

    d.   counsel to Wells Fargo Bank, National Association, as Prepetition RCF Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Kate Day and William A. (Trey) Wood III);

    e.   counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street., Suite 1800, Dallas, Texas 75201 (Attn: Marty L. Brimmage, Jr.) and One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff and Philip C. Dublin); and

    f.   the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Esq.).

**IF YOU DO NOT OBJECT TO THE PROPOSED REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE TO WHICH YOU ARE A COUNTERPARTY BY THE OBJECTION DEADLINE, THEN YOU WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING A FUTURE OBJECTION WITH REGARD TO ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE TO WHICH YOU ARE A COUNTERPARTY.**

---

[3]    Pursuant to the Protocol for Emergency Public Health or Safety Conditions (adopted by General Order 2020-4 and thereafter amended and extended from time to time), all hearings are currently being held by video/audio platforms.  Parties should consult the Court's website at www.txs.uscourts.gov to confirm the method and procedures for appearance at any hearing.

8.      Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' solicitation agent, Prime Clerk LLC (the "<u>Solicitation Agent</u>"), at <u>https://cases.primeclerk.com/diamond</u>.   Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (877) 720-6570 (International) or (929) 955-3417 (Domestic), or sending an electronic mail message to the Solicitation Agent at diamondinfo@primeclerk.com.

[*Remainder of page intentionally left blank*]

Dated:    [●], 2021

By: _____

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:    (713) 226-6000
Facsimile:    (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com

*Co-Counsel to the Debtors and the Debtors-in-Possession*

– and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
Shamara R. James (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
pbasta@paulweiss.com
rbritton@paulweiss.com
chopkins@paulweiss.com
anofzinger@paulweiss.com
sjames@paulweiss.com

*Counsel to the Debtors and
the Debtors-in-Possession*

**Exhibit 1**

| Contract/Lease | Contract/Lease Counter Party | Rejecting Debtor Entity | Contract Description/Property Address | Effective Rejection Date |
|---|---|---|---|---|
| | | | | [Effective Date of the Plan] |
| | | | | [Effective Date of the Plan] |
| | | | | [Effective Date of the Plan] |
| | | | | [Effective Date of the Plan] |

**Exhibit D**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) |  |
|  | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**NOTICE OF CURE OF ASSUMED
EXECUTORY CONTRACT OR UNEXPIRED LEASE**

**PLEASE TAKE NOTICE THAT:**

1.     On [●], 2021, Diamond Offshore Drilling, Inc. and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Plan"), and a disclosure statement for the Plan [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Disclosure Statement")[2] pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code [Docket No. [●]].

2.     In accordance with Article V of the Plan, and in accordance with sections 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Claims, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party, and which have not expired by their own terms on or prior to the Effective Date, shall be deemed assumed, except for any Executory Contract or Unexpired Lease that (a) is identified on the Schedule of Rejected Contracts; (b) has been

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

previously rejected by a Final Order; (c) is the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (d) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections of Executory Contracts and Unexpired Leases provided for in the Plan, the Confirmation Order or the Schedule of Rejected Contracts, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions of Executory Contracts and Unexpired Leases pursuant to the Plan and the Confirmation Order are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan, the Confirmation Order or by any other order of the Bankruptcy Court, but not assigned to a third party before the Effective Date, shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

3.      You are receiving this notice (this "Notice") because the Debtors' records reflect that you are a party to a Executory Contract or Unexpired Lease that is listed on the Cure Schedule (as defined below).  Therefore, you are advised to carefully review the information contained in this Notice and the related provisions of the Plan, including the Cure Schedule.[3]

4.      The schedule of proposed Cure Amounts (the "Cure Schedule") attached hereto as **Exhibit 1** sets forth the amounts that the Debtors have determined are required to be paid to you, if any such amounts are required, to cure any monetary default and permit the Debtors to assume your Executory Contracts or Unexpired Leases pursuant to the Plan.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease on the Cure Schedule, the Debtors believe that there is no Cure Amount outstanding for such contract or lease.

5.      The Debtors, subject to the terms of the Plan, reserve the right to alter, amend, modify, or supplement any information set forth herein and on the Cure Schedule, including to add or delete any Executory Contract or Unexpired Lease set forth on the Cure Schedule, at any time up to and including the Effective Date of the Plan.  As such, the Cure Schedule is not final, is subject to ongoing review, and remains subject to approval in accordance with the Plan.

6.      If you have any questions about this Notice, including the proposed Cure Amounts set forth on the Cure Schedule, or believe the amount to be inaccurate, please contact the Debtors' solicitation agent, Prime Clerk LLC (the "Solicitation Agent") at diamondinfo@primeclerk.com.  If, after discussion with the Debtors and their advisors, you cannot

---

[3]   Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Cure Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Furthermore, the Debtors expressly reserve the right to alter, amend, modify, or supplement the Cure Schedule or the Schedule of Rejected Contracts identified in Article V of the Plan and in the Plan Supplement at any time up to and including the Effective Date.

consensually agree on the appropriate Cure Amount prior to the objection deadline set forth below, you must file and serve an objection as set forth in paragraph 9 below.

7.     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any Proofs of Claim Filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

8.     A hearing to consider confirmation of the Plan, and any objections thereto, will be held on **April 8, 2021, at 9:00 a.m. (prevailing Central Time)** before the Honorable David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002, or as soon thereafter as counsel may be heard (the "Confirmation Hearing").[4]

9.     Any objections to confirmation of the Plan, including any objection to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease pursuant to the Plan or any Cure Amount, must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the applicable Bankruptcy Rules and Local Rules; and (e) be filed with the Bankruptcy Court, together with proof of service, and served on the following parties so as to be received by **no later than March 30, at 4:00 p.m. (prevailing Central Time)** (the "Objection Deadline"):

a.   the Debtors, 15415 Katy Freeway, Houston, Texas 77094 (Attn: General Counsel);

b.   counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Robert A. Britton, and Christopher Hopkins), and (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002 (Attn: John F. Higgins, Eric M. English, and M. Shane Johnson);

c.   counsel to the Ad Hoc Group of Senior Noteholders, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis F. Dunne, Tyson M. Lomazow, and Ryan A. Berger);

---

[4]   Pursuant to the Protocol for Emergency Public Health or Safety Conditions (adopted by General Order 2020-4 and thereafter amended and extended from time to time), all hearings are currently being held by video/audio platforms. Parties should consult the Court's website at www.txs.uscourts.gov to confirm the method and procedures for appearance at any hearing.

d.   counsel to Wells Fargo Bank, National Association, as Prepetition RCF Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Kate Day and William A. (Trey) Wood III);

e.   counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street., Suite 1800, Dallas, Texas 75201 (Attn: Marty L. Brimmage, Jr.) and One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff and Philip C. Dublin); and

f.   the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Esq.).

**ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO THE PROPOSED ASSUMPTION, ASSUMPTION AND ASSIGNMENT, OR RELATED CURE AMOUNT WILL BE DEEMED TO HAVE ASSENTED TO SUCH ASSUMPTION (OR ASSUMPTION AND ASSIGNMENT) AND CURE AMOUNT OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.   SUCH COUNTERPARTIES TO SUCH EXECUTORY CONTRACTS OR UNEXPIRED LEASES SHALL BE DEEMED TO RELEASE AND WAIVE, SUBJECT TO SUCH COUNTERPARTIES' RECEIPT OF THE RELEVANT CURE AMOUNTS, ANY AND ALL RIGHTS ARISING UNDER SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE RELATED TO ANY DEFAULT, CROSS-DEFAULT, TERMINATION, PUT RIGHT, OR OTHER SIMILAR PROVISION RELATED TO ANY EVENT, DEFAULT, OR POTENTIAL DEFAULT ON OR OCCURRING PRIOR TO THE EFFECTIVE DATE.**

10.   The Bankruptcy Court will determine any Assumption Dispute by entry of an order; *provided*, that the Debtors or the Reorganized Debtors, as applicable, may settle any Assumption Dispute and without any further action, order, or approval of the Bankruptcy Court; *provided, further*, that where an Assumption Dispute relates solely to the applicable Cure Amount, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute, subject to establishing an escrow with funds in an amount as agreed by the parties thereto or as determined by the Bankruptcy Court at the Confirmation Hearing.  If there is an Assumption Dispute, the Debtors reserve the right (subject to the reasonable consent of the Requisite Consenting Stakeholders) to reject or nullify the assumption or assignment of the applicable executory contract or unexpired lease no later than thirty (30) days after an order of the Bankruptcy Court resolving such Assumption Dispute becomes a Final Order.

11.   Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' Solicitation Agent, at https://cases.primeclerk.com/diamond.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (877) 720-6570 (International) or (929) 955-3417 (Domestic), or sending an electronic mail message to the Solicitation Agent at diamondinfo@primeclerk.com.

*[Remainder of page intentionally left blank]*

4

Dated:      [●], 2021

By: _____

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com

*Co-Counsel to the Debtors and the Debtors-in-Possession*

– and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
Shamara R. James (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
pbasta@paulweiss.com
rbritton@paulweiss.com
chopkins@paulweiss.com
anofzinger@paulweiss.com
sjames@paulweiss.com

*Counsel to the Debtors and the Debtors-in-Possession*

**Exhibit 1**

| Contract/Lease | Contract/Lease Counter Party | Assuming Debtor Entity | Contract Description/Property Address | Cure Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## **Exhibit E-1**

**Class 3 RCF Claim Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DIAMOND OFFSHORE
DRILLING, INC. AND ITS DEBTOR AFFILIATES**

**BALLOT FOR HOLDERS OF CLASS 3 RCF CLAIMS**

**PLEASE READ THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT AND FOLLOW THE RELEVANT INSTRUCTIONS.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), are soliciting votes with respect to the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on [●],

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

2021 [Docket No. [●]] (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (this "Ballot") because you are a Holder of an RCF Claim (your "RCF Claim") as of February 24, 2021 (the "Voting Record Date").  Accordingly, you have a right to (a) vote to accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the third-party release set forth in Article VIII.D of the Plan.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE A RCF CLAIM.**

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/diamond; (ii) writing to Diamond Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing diamondballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

Domestic: (877) 720-6570
International: (929) 955-3417

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your RCF Claim has been placed in Class 3 under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot.  Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**Diamond Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

2

*OR*

**Via E-Ballot Portal.**  Submit your Ballot via the Solicitation Agent's online portal, by visiting **https://cases.primeclerk.com/diamond** (the "**E-Ballot Portal**").  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

**The Solicitation Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**Holders of RCF Claims who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

<u>Item 1</u>.        **Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of RCF Claims in the following aggregate unpaid principal amount:

$$\boxed{\$\underline{\qquad\qquad}}$$

<u>Item 2</u>.        **Vote on Plan**

The Holder of the RCF Claims set forth in Item 1 votes to (please check only one):

| ☐ **ACCEPT** (vote FOR) the Plan        ☐ **REJECT** (vote AGAINST) the Plan |
|---|

Any Ballot that is executed by the Holder of a RCF Claim but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

<u>Item 3</u>.            **Important Information Regarding the Third-Party Release**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH IN ARTICLE VIII.C, D, E, AND F OF THE PLAN, WHICH PROVISIONS ARE SET FORTH IN <u>EXHIBIT 1</u> ATTACHED HERETO.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN.  IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.**

**<u>The Holder of the Class 3 RCF Claim identified in Item 1 elects to</u>:**

> ☐ **OPT OUT of the Third-Party Release**

---

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN AS PROVIDED IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.  BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

---

**Item 4**.         **Election to Participate in the Exit Revolving Credit Facility**

As set forth in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed RCF Claim will receive, either:

i.   if such Holder elects to participate in the Exit Revolving Credit Facility, (A) first, its Pro Rata share calculated as a percentage of all Holders in such Class that elect to participate in the Exit Revolving Credit Facility (its "Participating RCF Lender Share") of the RCF Cash Paydown; (B) second, to the extent such Holder's RCF Claims have not been satisfied in full after the application of the RCF Cash Paydown under clause (A) above, its Participating RCF Lender Share of up to $100 million of funded loans under the Exit Revolving Credit Facility, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[2]; and (C) third, to the extent such Holder's RCF Claims have not been satisfied in full after the application of the RCF Cash Paydown under clause (A) above and the allocation of funded loans under clause (B) above, a share of $200 million (less the amount of aggregate funded loans under the Exit Revolving Credit Facility on the Effective Date allocated pursuant to clause (B) above) of the Exit Term Loan Facility that is equal to the remaining unsatisfied amount of such Holder's RCF Claims, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[3], *provided* that the aggregate amount of any such Holder's shares of the amounts described in the foregoing clauses (A), (B), and (C) shall not exceed the amount of such Holder's RCF Claims; or

ii.  if such Holder does not elect to participate in the Exit Revolving Credit Facility, (A) first, a share of $200 million, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[4] (less the amount of aggregate funded loans under the Exit Revolving Credit Facility on the Effective Date allocated pursuant to clause (i)(B) above) of the Exit Term Loan Facility that is equal to the lesser of (x) its RCF Claims and (y) its Pro Rata share (calculated as a percentage of all Holders in such Class that do not elect to participate in the Exit Revolving Credit Facility) (its "Non-Participating RCF Lender Share") of the portion of the $200 million, with such amount subject to change based upon the Effective Date and interest accrued on RCF Claims through such date[5], of the Exit Term Loan Facility that is not allocated to participating Holders pursuant to clause (i)(C) above and (B) second, solely to the extent such Holder's RCF Claims have not been satisfied in full after the allocation of the Exit Term Loan Facility under clause (A) above, a portion of the RCF Cash Paydown equal to the lesser of (x) such Holder's remaining unsatisfied RCF Claims and (y) such Holder's Non-Participating RCF Lender Share of the amount of the RCF Cash Paydown that has not been allocated to the participating RCF Lenders pursuant to clause (i)(A) above.

---

[2]   Amounts determined assuming an April 23, 2021 emergence date.
[3]   Amounts determined assuming an April 23, 2021 emergence date.
[4]   Amounts determined assuming an April 23, 2021 emergence date.
[5]   Amounts determined assuming an April 23, 2021 emergence date.

The Holder of the Class 3 RCF Claim set forth in Item 1 elects to (please check only one):

☐ **Elects** to participate in the Exit Revolving Credit Facility in the full amount of its Participating RCF Lender Share   ☐ **Declines** to participate in the Exit Revolving Credit Facility

**Item 5.**        **Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

   a.   as of the Voting Record Date, either: (i) the Entity is the Holder of the RCF Claim being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the RCF Claim being voted;

   b.   the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

   c.   the Entity has cast the same vote with respect to all RCF Claims; and

   d.   no other Ballots with respect to the amount of the RCF Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such RCF Claims, then any such earlier Ballots are hereby revoked.

Name of Holder: _____

                            (Print or Type)


Signature: _____

Name of Signatory: _____

                            (If other than the Holder)

Title: _____

Address: _____

            _____

            _____

Telephone
Number: _____

Email: _____

Date Completed: _____

6

> **IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as Exhibit A to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies this Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  To ensure that your Ballot is counted, you *must* complete and submit this Ballot as instructed herein. **Ballots will not be accepted by electronic mail or facsimile.**

4.  **Use of Ballot**. To ensure that your Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and submit your Ballot as instructed herein.

5.  Your Ballot *must* be returned to the Solicitation Agent so as to be *actually received* by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is March 30, 2021, at 4:00 p.m., prevailing Central Time.**

6.  If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will *not* be counted**:

    a.  any Ballot that partially rejects and partially accepts the Plan;

    b.  Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any agent, indenture trustee, or the Debtors' financial or legal advisors;

c.   Ballots sent by electronic mail or facsimile;

d.   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

e.   any Ballot cast by an Entity that does not hold an RCF Claim;

f.   any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

g.   any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed);

h.   any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed original); and/or

i.   any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7.   The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of an RCF Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.   If multiple Ballots are received from the same Holder of an RCF Claim with respect to the same RCF Claim prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots; *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same RCF Claim, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

9.   You must vote all of your RCF Claims within Class 3 either to accept or reject the Plan and may ***not*** split your vote.  If you elect to participate in the Exit Revolving Credit Facility, you must participate for the full Participating RCF Lender Share.

10.   This Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.

11.   **<u>Please be sure to sign and date your Ballot</u>**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

12.     If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you receive.

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**DOMESTIC: (877) 720-6570**
**INTERNATIONAL: (929) 955-3417**

**OR EMAIL DIAMONDBALLOTS@PRIMECLERK.COM**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

---

*[Remainder of page intentionally left blank]*

## __Exhibit 1__

**Plan Injunction, Releases, and Exculpation**

[Exhibit E-7 to be attached here]

**Exhibit E-2**

**Class 4 Senior Notes Claims – Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) Case No. 20-32307 (DRJ) |
| | ) |
| Debtors. | ) **(Jointly Administered)** |
| | ) |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DIAMOND OFFSHORE
DRILLING, INC. AND ITS DEBTOR AFFILIATES**

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF CLASS 4 SENIOR NOTES
CLAIMS**

**PLEASE READ THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT AND FOLLOW THE RELEVANT INSTRUCTIONS.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE SOLICITATION AGENT BY MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "_VOTING DEADLINE_").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE SOLICITATION AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters, and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[CUSIP/ISIN indicated on Annex A hereto]

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), are soliciting votes with respect to the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on [●], 2021 [Docket No. [●]] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Ballot for Beneficial Holders[2] (the "Beneficial Holder Ballot") because you are a Beneficial Holder of a Claim arising on account of the Senior Notes indicated on **Annex A** hereto as of February 24, 2021 (the "Voting Record Date"). Accordingly, you have a right to vote to (a) accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the third-party release set forth in Article VIII.D of the Plan. You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Holders of the Class of Claims indicated on **Annex A** hereto.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Beneficial Holder Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/diamond; (ii) writing to Diamond Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing diamondballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

Domestic: (877) 720-6570
International: (929) 955-3417

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

2        [CUSIP/ISIN indicated on Annex A hereto]

you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee immediately.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in the Class of Claims indicated on **Annex A** hereto, under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

In order for your vote to count, your Nominee must receive this Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is March 30, 2021, at 4:00 p.m., prevailing Central Time.  Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee.  If a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

**Item 1**.          **Amount of Claim**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Claims in the Class indicated on **Annex A** hereto in the following aggregate unpaid principal amount (insert amount in box below, unless otherwise completed by your Nominee):

$$\boxed{\text{\$_____}}$$

**Item 2**.          **Vote on Plan**

The Beneficial Holder of the Claim, the aggregate amount of which is set forth in Item 1, votes to (please check only <u>one</u>):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

Any Beneficial Holder Ballot that is executed by the Beneficial Holder of a Senior Notes Claim but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**Item 3**.          **Important Information Regarding the Third-Party Release**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN.  IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH IN ARTICLE VIII.C, D, E, AND F OF THE PLAN, WHICH PROVISIONS ARE SET FORTH IN <u>EXHIBIT 1</u> ATTACHED HERETO.**

3          [CUSIP/ISIN indicated on Annex A hereto]

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN. IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.**

<u>**The Beneficial Holder of the Claims identified in Item 1 elects to:**</u>

> ☐ <u>**OPT OUT of the Third-Party Release**</u>

---

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN AS PROVIDED IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

---

<u>**Item 4**</u>.        **Other Beneficial Holder Ballots Submitted**

By returning this Beneficial Holder Ballot, the Holder of the Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Claims identified in Item 1 owned by such Holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the Holder in the same Class indicate the same vote to accept or reject the Plan that the Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

4        [CUSIP/ISIN indicated on Annex A hereto]

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER
CLAIMS IN THE SAME CLASS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number | Name of Registered Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

<u>**Item 5**</u>.        **Certifications**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.      as of the Voting Record Date, either: (i) the Entity is the Holder of the Claims being voted on this Beneficial Holder Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Beneficial Holder Ballot;

b.      the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the Entity has cast the same vote with respect to all Claims in a single Class; and

d.      no other Beneficial Holder Ballots with respect to the amount of the Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Beneficial Holder Ballots are hereby revoked.

Name of Holder: _____
                                        (Print or Type)


Signature: _____
Name of Signatory: _____
                                  (If other than the Beneficial Holder)

Title: _____
Address: _____
              _____

[CUSIP/ISIN indicated on Annex A hereto]

| | |
|---|---|
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT SUBMITTED ON YOUR BEHALF WHICH REFLECTS YOUR VOTE ON OR BEFORE MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot to your Nominee in sufficient time to allow your Nominee to process your vote and submit a Master Ballot so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.  You may instruct your Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) sign and return the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your

[CUSIP/ISIN indicated on Annex A hereto]

Nominee.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time.  Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

4.  **The following Beneficial Holder Ballots will <u>not</u> be counted**:

   a.  any Beneficial Holder Ballot that partially rejects and partially accepts the Plan;

   b.  Beneficial Holder Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), any indenture trustee, or the Debtors' financial or legal advisors;

   c.  Beneficial Holder Ballot returned to a Nominee not in accordance with the Nominee's instructions;

   d.  any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

   e.  any Beneficial Holder Ballot cast by an Entity that does not hold a Claim in the Class indicated on **<u>Annex A</u>** hereto;

   f.  any Beneficial Holder Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

   g.  any unsigned Beneficial Holder Ballot (except in accordance with the Nominee's instructions);

   h.  any non-original Beneficial Holder Ballot (except in accordance with the Nominee's instructions); and/or

   i.  any Beneficial Holder Ballot not marked to accept or reject the Plan or any Beneficial Holder Ballot marked both to accept and reject the Plan.

5.  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee.  No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

6.  If you deliver multiple Beneficial Holder Ballots to your Nominee with respect to the same Claims prior to the Voting Deadline, the last received valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

[CUSIP/ISIN indicated on Annex A hereto]

7. You must vote all of your Claims within the same Class either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Claims within the same Class for the purpose of counting votes.

8. This Beneficial Holder Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

9. **Please be sure to sign and date your Beneficial Holder Ballot**. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

10. If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot that you receive.

11. The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**DOMESTIC: (877) 720-6570**
**INTERNATIONAL: (929) 955-3417**

**OR EMAIL DIAMONDBALLOTS@PRIMECLERK.COM.**

[CUSIP/ISIN indicated on Annex A hereto]

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT ON OR BEFORE MARCH 30, 2021 AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

[*Remainder of page intentionally left blank*]

[CUSIP/ISIN indicated on Annex A hereto]

## Annex A

**Please check one (and only one) box below to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot pertains (or clearly indicate such information directly on the Beneficial Holder Ballot or on an exhibit thereto).  If you check more than one box, you risk having all votes submitted through this Beneficial Holder Ballot invalidated.**

| Class 4 (Senior Notes Claims) | | |
|---|---|---|
| ☐ | 3.45% Senior Notes due 2023 | CUSIP 25271CAM4<br>ISIN US25271CAM47 |
| ☐ | 7.875% Senior Notes due 2025 | CUSIP 25271CAP7<br>ISIN US25271CAP77 |
| ☐ | 5.70% Senior Notes due 2039 | CUSIP 25271CAL6<br>ISIN US25271CAL63 |
| ☐ | 4.875% Senior Notes due 2043 | CUSIP 25271CAN2<br>ISIN US25271CAN20 |

## **Exhibit 1**

### **Plan Injunction, Releases, and Exculpation**

[Exhibit E-7 to be attached here]

**<u>Exhibit E-3</u>**

**Class 4 Senior Notes Claims – Master Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DIAMOND OFFSHORE
DRILLING, INC. AND ITS DEBTOR AFFILIATES**

**MASTER BALLOT FOR HOLDERS OF CLASS 4 SENIOR NOTES CLAIMS**

> **PLEASE READ THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT AND FOLLOW THE RELEVANT INSTRUCTIONS.**
>
> **IN ORDER FOR THE VOTES ON THIS MASTER BALLOT TO BE COUNTED, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), are soliciting votes with respect to the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Plan") as set forth in the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on [●],

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[CUSIP/ISIN indicated on Annex A hereto]

2021 [Docket No. [●]] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[2] of the Claims indicated on **Annex A** hereto as of February 24, 2021 (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders of Claims indicated on Annex A hereto, to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan.**

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/diamond; (ii) writing to Diamond Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing diamondballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

Domestic: (877) 720-6570
International: (929) 955-3417

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot (as defined below), and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you transmit votes. You or the Beneficial Holders of the Claims for whom you are the Nominee may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of such Claims.

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

2 [CUSIP/ISIN indicated on Annex A hereto]

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims or Interests. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**The Voting Deadline is on <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time.**

<u>**Item 1**</u>.        **Certification of Authority to Vote**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐        Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Claims listed in Item 2 below, or

☐        Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of Claims listed in Item 2 below, or

☐        Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner of the aggregate principal amount of Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Claims described in Item 2.

<u>**Item 2**</u>.        **Claims Vote on Plan**

The undersigned transmits the following votes of Beneficial Holders of Claims arising on account of the Senior Notes indicated on <u>**Annex A**</u> hereto and certifies that the following Beneficial Holders of such Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed ballots (the "<u>Beneficial Holder Ballots</u>") casting such votes as indicated and containing instructions for the casting of those votes on their behalf.  For purposes of this Master Ballot, accrued or unmatured interest should not be included.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Claims to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  **If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to releases by Holders of Claims, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column below for each Beneficial Holder that checked the box, unless the Beneficial Holder has voted to accept the Plan.**

| Your Customer Account Number for Each Beneficial Holder of Claims | Principal Amount Held as of Voting Record Date | **Item 2** Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | | **Item 3** If the box in Item 3 of the Beneficial Holder Ballot was completed, check the box in the column below |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | OPT OUT of the Third-Party Release |
| 1 | $ | | | | |
| 2 | $ | | | | |
| 3 | $ | | | | |
| 4 | $ | | | | |
| 5 | $ | | | | |
| 6 | $ | | | | |
| TOTALS | $ | | | | |

**Item 3.**         **Other Ballots Submitted by Beneficial Holders in the Same Class**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| Your customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Item 4 of the Beneficial Holder Ballot | | | |
|---|---|---|---|---|
| | Account Number | Name of Registered Holder or Nominee | Principal Amount of Other Claims | CUSIP of other Class Claim Votes |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 4.**         **Important Information Regarding the Third-Party Release**

Beneficial Holders who vote to reject the Plan in Item 2 of the Beneficial Holder Ballot or abstain from voting on the Plan must check the box in Item 3 of the Beneficial Holder Ballot if they elect not to grant the release contained in Article VIII.D of the Plan. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at the Beneficial Holder's option. If a Beneficial Holder submits its Beneficial Holder Ballot without this box in Item 3 checked, or if the Beneficial Holder does not submit a ballot by the Voting Deadline, the Beneficial Holder will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law. If the Beneficial Holder voted to accept the Plan in Item 2 of the Beneficial Holder Ballot, (a) the Beneficial Holder will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law and (b) if the Beneficial Holder checked the box in Item 3 of the Beneficial Holder Ballot, its election not to grant the releases will not be counted. The release, injunction, and exculpation provisions set forth in Article VIII.C, D, E, and F of the Plan are set forth in **Exhibit 1** attached hereto.

**Item 5.**         **Certifications**

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.   it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims listed in Item 2 above;

b.   it has received a completed and signed Beneficial Holder Ballot (or other accepted and customary method of communicating a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

c.   it is the registered Holder of all the Claims listed in Item 2 above being voted, or it has been authorized by each Beneficial Holder of the Claims listed in Item 2 above to vote on the Plan;

d.   no other Master Ballots with respect to the same Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier received Master Ballots are hereby revoked;

e.   it has properly disclosed: (i) the number of Beneficial Holders of Claims who completed the Beneficial Holder Ballots; (ii) the respective amounts of the Claims owned, as the case may be, by each Beneficial Holder of the Claims who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder of Claims' respective vote concerning the Plan; (iv) each such Beneficial Holder of Claims' certification as to other Claims voted in the same Class; and (v) the customer account or other identification number for each such Beneficial Holder of Claims; and

f.   it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders of Claims (whether properly completed or

defective) for at least one year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

Name of Nominee: _____
(Print or Type)


Participant Number: _____

Name of Proxy Holder or Agent for Nominee (if applicable):

_____
(Print or Type)

Signature: _____

Name of
Signatory: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____


**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED VIA FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY, OR VIA ELECTRONIC MAIL SERVICE TO:**

**Diamond Ballot Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165
diamondballots@primeclerk.com**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE MARCH 30, 2021 AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES TRANSMITTED BY THIS MASTER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

6 [CUSIP/ISIN indicated on Annex A hereto]

## <u>INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT</u>

1. The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3. You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time or otherwise validate the Master Ballot in a manner acceptable to the Solicitation Agent.

4. If you are transmitting the votes of any Beneficial Holder of Claims other than yourself, you may either:

   a. "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting within five Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent.  A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be

maintained by Nominees for inspection for at least one year from the Effective Date; or

b       Within five Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee.  The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.

5.      With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan.  You may be ordered to produce the Beneficial Holder Ballots (or evidence of the vote transmitted to you) to the Debtors or the Bankruptcy Court.

(i)     The Master Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time.**

(ii)    If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors.  Additionally, **the following Master Ballots will <u>not</u> be counted:**

a.      any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

b.      any Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan;

c.      any Master Ballot sent by facsimile or any electronic means other than electronic mail;

d.      any unsigned Master Ballot (for the avoidance of doubt, Master Ballots validly submitted via electronic mail will be deemed signed);

8 [CUSIP/ISIN indicated on Annex A hereto]

e.  any Master Ballot that does not contain an original signature; provided, *however*, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;

f.  any Master Ballot not marked to accept or reject the Plan; and/or

g.  any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

8.  The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot.  In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

9.  If a Beneficial Holder or Nominee holds a Claim in a Voting Class against multiple Debtors, a vote on their Beneficial Holder Ballot will apply to all applicable Classes and Debtors against whom such Beneficial Holder or Nominee has such Claim, as applicable, in that Voting Class.

10.  If multiple Master Ballots are received from the same Nominee with respect to the same Claims voted on a Beneficial Holder Ballot prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

11.  The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.

12.  **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.  If you are both the Nominee and the Beneficial Holder of any of the Claims indicated on **Annex A** of the Master Ballot or Beneficial Holder Ballot, as applicable, and you wish to vote such Claims, you may vote such Claims where indicated on the Master Ballot for such Claims and you must vote your entire Claims in the same Class to either accept or reject the Plan and may not split your vote.

14.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be

9 [CUSIP/ISIN indicated on Annex A hereto]

aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity may be counted separately as a vote to accept or reject the Plan. Any party in interest may contest any such aggregation of multiple Claims at the Confirmation Hearing.

15. The following additional rules shall apply to Master Ballots:

a. Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims as of the Voting Record Date, as evidenced by the record and depository listings.

b. Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims held by such Nominee;

c. To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

d. To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Claims; and

e. For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating to its holdings in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the Claim amount.

**<u>PLEASE MAIL YOUR MASTER BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**DOMESTIC: (877) 720-6570**
**INTERNATIONAL: (929) 955-3417**

**OR EMAIL DIAMONDBALLOTS@PRIMECLERK.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

---

## Annex A

**Please check one (and only one) box below to indicate the Plan Class and CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on an exhibit thereto). If you check more than one box, you risk having all votes submitted through this Master Ballot invalidated.**

| Class 4 (Senior Notes Claims) | | |
|---|---|---|
| ☐ | 3.45% Senior Notes due 2023 | CUSIP 25271CAM4 <br> ISIN US25271CAM47 |
| ☐ | 7.875% Senior Notes due 2025 | CUSIP 25271CAP7 <br> ISIN US25271CAP77 |
| ☐ | 5.70% Senior Notes due 2039 | CUSIP 25271CAL6 <br> ISIN US25271CAL63 |
| ☐ | 4.875% Senior Notes due 2043 | CUSIP 25271CAN2 <br> ISIN US25271CAN20 |

## **Exhibit 1**

**Plan Injunction, Releases, and Exculpation**

[Exhibit E-7 to be attached here]

**<u>Exhibit E-4</u>**

**Class 7 Existing Parent Equity Interests – Registered Holder Ballot**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) |  |
|  | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

## REGISTERED HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DIAMOND OFFSHORE DRILLING, INC. AND ITS DEBTOR AFFILIATES

### REGISTERED HOLDER BALLOT FOR HOLDERS OF CLASS 7 EXISTING PARENT EQUITY INTERESTS

---

**PLEASE READ THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT AND FOLLOW THE RELEVANT INSTRUCTIONS.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "<u>VOTING DEADLINE</u>") IN ACCORDANCE WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on [●], 2021 [Docket No. [●]] (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (this "Ballot") because you are a registered holder of Class 7 Existing Parent Equity Interests (your "Interests") as of February 24, 2021 (the "Voting Record Date").  Accordingly, you have a right to (a) vote to accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the third-party release set forth in Article VIII.D of the Plan.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/diamond; (ii) writing to Diamond Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing diamondballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

Domestic: (877) 720-6570
International: (929) 955-3417

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Interests.  Your Interests have been placed in Class 7 under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot.  Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**Diamond Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**
***OR***

2

**Via E-Ballot Portal.**  Submit your Ballot via the Solicitation Agent's online portal, by visiting **https://cases.primeclerk.com/diamond** (the "**E-Ballot Portal**").   Click on the "**Submit E-Ballot**" section of the website and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

**The Solicitation Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Interests described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**Holders of Existing Parent Equity Interests who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

**Item 1.**        **Amount of Interests for Voting Purposes**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Existing Parent Equity Interests in the amount below:[2]

| Number of Shares |
| :---: |
| _____ |

**Item 2.**        **Vote on Plan**

The Holder of the Interests set forth in Item 1 votes to (please check only one):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
| :--- | :--- |

Any Ballot that is executed by the Holder of Interests but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**Item 3.**        **Important Information Regarding the Third-Party Release**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN.  IF YOU VOTE TO**

---

[2]      For voting purposes only, subject to tabulation rules.

**ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH IN ARTICLE VIII.C, D, E, AND F OF THE PLAN, WHICH PROVISIONS ARE SET FORTH IN <u>EXHIBIT 1</u> ATTACHED HERETO.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN. IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.**

<u>**The Holder of the Class 7 Existing Parent Equity Interests identified in Item 1 elects to:**</u>

> ☐ **OPT OUT of the Third-Party Release**

> **ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN AS PROVIDED IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

<u>**Item 4**</u>.        **Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

    a.  as of the Voting Record Date, either: (i) the Entity is the Holder of Interests being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Interests being voted;

    b.   the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

    c.   the Entity has cast the same vote with respect to all Interests; and

    d.   no other Ballots with respect to the amount of the Interests identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Interests, then any such earlier Ballots are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | *(Print or Type)* |
| | |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | *(If other than the Holder)* |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.    The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies this Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.      The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.      To ensure that your Ballot is counted, you *must* complete and submit this Ballot as instructed herein.  **Ballots will not be accepted by electronic mail or facsimile.**

4.      **Use of Ballot**.  To ensure that your Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and submit your Ballot as instructed herein.

5.      Your Ballot *must* be returned to the Solicitation Agent so as to be *actually received* by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is March 30, 2021, at 4:00 p.m., prevailing Central Time.**

6.      If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

   a.  any Ballot that partially rejects and partially accepts the Plan;

   b.  Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any agent, indenture trustee, or the Debtors' financial or legal advisors;

   c.  Ballots sent by electronic mail or facsimile;

   d.  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Interests;

   e.  any Ballot cast by an Entity that does not hold an Existing Parent Equity Interest;

   f.  any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

   g.  any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed);

   h.  any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed original); and/or

   i.  any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7.      The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of Interests.  Except as otherwise provided herein, such delivery will be

deemed made only when the Solicitation Agent **actually receives** the originally executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.   If multiple Ballots are received from the same Holder of Interests with respect to the same Interests prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots; *provided* that if a Holder timely submits both a paper Ballot and an electronic Ballot on account of the same Existing Parent Equity Interests, the electronic Ballot shall supersede the paper Ballot regardless of the order that the Ballots are received.

9.   You must vote all of your Interests within Class 7 either to accept or reject the Plan and may **not** split your vote.

10.  This Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.

11.  **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

12.  If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot that you receive.

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**DOMESTIC: (877) 720-6570**
**INTERNATIONAL: (929) 955-3417**

**OR EMAIL DIAMONDBALLOTS@PRIMECLERK.COM.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## **Exhibit 1**

**Plan Injunction, Releases, and Exculpation**

[Exhibit E-7 to be attached here]

**Exhibit E-5**

**Class 7 Existing Parent Equity Interests – Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| | ) | |
| DIAMOND OFFSHORE DRILLING, INC., *et al*.,[1] | ) | Case No. 20-32307 (DRJ) |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DIAMOND OFFSHORE DRILLING, INC. AND ITS DEBTOR AFFILIATES**

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF CLASS 7 EXISTING PARENT EQUITY INTERESTS (CUSIP 25271C102 / ISIN US25271C1027)**

**PLEASE READ THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT AND FOLLOW THE RELEVANT INSTRUCTIONS.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE SOLICITATION AGENT BY MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "_VOTING DEADLINE_").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE SOLICITATION AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT,**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496). The Debtors' primary headquarters, and mailing address is 15415 Katy Freeway, Houston, TX 77094.

**SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "<u>Disclosure Statement</u>").  The Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by entry of an order on [●], 2021 [Docket No. [●]] (the "<u>Disclosure Statement Order</u>").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Ballot for Beneficial Holders[2] (the "<u>Beneficial Holder Ballot</u>") because you are a Beneficial Holder of Class 7 Existing Parent Equity Interests as of February 24, 2021 (the "<u>Voting Record Date</u>").  Accordingly, you have a right to (a) vote to accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the third-party release set forth in Article VIII.D of the Plan.  You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "<u>Nominee</u>"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "<u>Master Ballot</u>") on behalf of the Beneficial Holders of the Existing Parent Equity Interests.

Your rights are described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Beneficial Holder Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "<u>Solicitation Agent</u>") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/diamond; (ii) writing to Diamond Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing diamondballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

Domestic: (877) 720-6570
International: (929) 955-3417

---

[2]   A "<u>Beneficial Holder</u>" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee immediately.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Existing Parent Equity Interests. Your Existing Parent Equity Interests have been placed in the Class 7 under the Plan. If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

In order for your vote to count, your Nominee must receive this Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is March 30, 2021, at 4:00 p.m., prevailing Central Time. Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

**Item 1.** **Amount of Class 7 Existing Parent Equity Interests**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Existing Parent Equity Interests in Class 7 in the following amount (insert amount in box below, unless otherwise completed by your Nominee):



**Item 2.** **Vote on Plan**

The undersigned Beneficial Holder of the Existing Parent Equity Interests, the aggregate amount of which is set forth in Item 1, votes to (please check only <u>one</u>):

☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan

Any Beneficial Holder Ballot that is executed by the Beneficial Holder of Existing Parent Equity Interests but that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**Item 3.** **Important Information Regarding the Third-Party Release**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH IN**

3

ARTICLE VIII.C, D, E, AND F OF THE PLAN, WHICH PROVISIONS ARE SET FORTH IN EXHIBIT 1 ATTACHED HERETO.

IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN.  IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.

**The Beneficial Holder of the Existing Parent Equity Interests identified in Item 1 elects to:**



☐ **OPT OUT of the Third-Party Release**

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN AS PROVIDED IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

<u>Item 4</u>.         **Other Beneficial Holder Ballots Submitted**

By returning this Beneficial Holder Ballot, the Holder of the Existing Parent Equity Interests identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Existing Parent Equity Interests identified in Item 1 owned by such Holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the Holder in the same Class indicate the same vote to accept or reject the Plan that the Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER CLASS 7 EXISTING PARENT EQUITY INTERESTS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number | Name of Registered Holder or Nominee | Amount of Other Existing Parent Equity Interests Voted (# of shares) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**Item 5.**        **Certifications**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.       as of the Voting Record Date, either: (i) the Entity is the Holder of the Existing Parent Equity Interests being voted on this Beneficial Holder Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Holder of the Existing Parent Equity Interests being voted on this Beneficial Holder Ballot;

b.       the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.       the Entity has cast the same vote with respect to all Existing Parent Equity Interests; and

d.       no other Beneficial Holder Ballots with respect to the amount of the Existing Parent Equity Interests identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Existing Parent Equity Interests, then any such earlier received Beneficial Holder Ballots are hereby revoked.

Name of Holder: _____
                              (Print or Type)

Signature: _____
Name of Signatory: _____
                              (If other than the Beneficial Holder)

5

| | |
|---|---|
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT SUBMITTED ON YOUR BEHALF WHICH REFLECTS YOUR VOTE ON OR BEFORE MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT

1.      The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2.      The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.      Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot to your Nominee in sufficient time to allow your Nominee to process your vote and submit a Master Ballot so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.  You may instruct your

Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) sign and return the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time.  Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

4.     **The following Beneficial Holder Ballots will <u>not</u> be counted**:

    a.     any Beneficial Holder Ballot that partially rejects and partially accepts the Plan;

    b.     Beneficial Holder Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), any indenture trustee, or the Debtors' financial or legal advisors;

    c.     Beneficial Holder Ballot returned to a Nominee not in accordance with the Nominee's instructions;

    d.     any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Existing Parent Equity Interests;

    e.     any Beneficial Holder Ballot cast by an Entity that does not hold Class 7 Existing Parent Equity Interests;

    f.     any Beneficial Holder Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

    g.     any unsigned Beneficial Holder Ballot (except in accordance with the Nominee's instructions);

    h.     any non-original Beneficial Holder Ballot (except in accordance with the Nominee's instructions); and/or

    i.     any Beneficial Holder Ballot not marked to accept or reject the Plan or any Beneficial Holder Ballot marked both to accept and reject the Plan.

5.     If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee.  No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

6.     If you deliver multiple Beneficial Holder Ballots to your Nominee with respect to the same Existing Parent Equity Interests prior to the Voting Deadline, the last received valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

7.     You must vote all of your Existing Parent Equity Interests either to accept or reject the Plan and may **not** split your vote.

8.     This Beneficial Holder Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.

9.     **Please be sure to sign and date your Beneficial Holder Ballot**. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

10.     If you hold Claims and/or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot that you receive.

11.     The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Existing Parent Equity Interests should not surrender certificates or instruments representing or evidencing their Existing Parent Equity Interests s, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**DOMESTIC: (877) 720-6570**
**INTERNATIONAL: (929) 955-3417**

8

**OR EMAIL DIAMONDBALLOTS@PRIMECLERK.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT ON OR BEFORE MARCH 30, 2021 AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

[*Remainder of page intentionally left blank*]

## **Exhibit 1**

**Plan Injunction, Releases, and Exculpation**

[Exhibit E-7 to be attached here]

<u>**Exhibit E-6**</u>

**Class 7 Existing Parent Equity Interests – Master Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DIAMOND OFFSHORE**
**DRILLING, INC. AND ITS DEBTOR AFFILIATES**

**MASTER BALLOT FOR HOLDERS OF CLASS 7 EXISTING PARENT EQUITY**
**INTERESTS (CUSIP 25271C102 / ISIN US25271C1027)**

---

**PLEASE READ THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT AND FOLLOW THE RELEVANT INSTRUCTIONS.**

**IN ORDER FOR THE VOTES ON THIS MASTER BALLOT TO BE COUNTED, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "<u>VOTING DEADLINE</u>") IN ACCORDANCE WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

1

1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on [●], 2021 [Docket No. [●]] (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[2] of Class 7 Existing Parent Equity Interests as of February 24, 2021 (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders of Existing Parent Equity Interests, to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Existing Parent Equity Interests to accept or reject the Plan.**

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials.  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/diamond; (ii) writing to Diamond Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing diamondballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

Domestic: (877) 720-6570
International: (929) 955-3417

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot (as defined below), and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you transmit votes.  You or the Beneficial Holders of the Existing Parent Equity Interests for whom

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

you are the Nominee may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of such Existing Parent Equity Interests.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims or Interests. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**The Voting Deadline is on <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time.**

<u>**Item 1**</u>.        **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐        Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate amount of the Existing Parent Equity Interests listed in Item 2 below, or

☐        Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee for the Beneficial Holders of the aggregate amount of Existing Parent Equity Interests listed in Item 2 below, or

☐        Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner of the aggregate amount of Existing Parent Equity Interests listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Existing Parent Equity Interests described in Item 2.

<u>**Item 2**</u>.        **Votes on Plan**

The undersigned transmits the following votes of Beneficial Holders of Existing Parent Equity Interests and certifies that the following Beneficial Holders of such Existing Parent Equity Interests, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Existing Parent Equity Interests as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed ballots (the "<u>Beneficial Holder Ballots</u>") casting such votes as indicated and containing instructions for the casting of those votes on their behalf.

Indicate in the appropriate column below the aggregate amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Existing Parent Equity Interests to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  **If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to releases by Holders of Interests, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column**

**below for each Beneficial Holder that checked the box, unless the Beneficial Holder has voted to accept the Plan.**

| Your Customer Account Number for Each Beneficial Holder of Existing Parent Equity Interests | Amount Held as of Voting Record Date | Item 2<br>Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | | Item 3<br>If the box in Item 3 of the Beneficial Holder Ballot was completed, check the box in the column below |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | OPT OUT of the Third-Party Release |
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| TOTALS | | | | | |

<u>**Item 3**</u>.         **Other Ballots Submitted by Beneficial Holders in the Same Class**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| Your customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot | Transcribe from Item 4 of the Beneficial Holder Ballot | | |
|---|---|---|---|
| | Account Number | Name of Registered Holder or Nominee | Amount of Other Existing Parent Equity Interests (# of shares) |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**Item 4.**         **Important Information Regarding the Third-Party Release**

Beneficial Holders who vote to reject the Plan in Item 2 of the Beneficial Holder Ballot or abstain from voting on the Plan must check the box in Item 3 of the Beneficial Holder Ballot if they elect not to grant the release contained in Article VIII.D of the Plan. Election to withhold consent to the releases contained in Article VIII.D of the Plan is at the Beneficial Holder's option. If a Beneficial Holder submits its Beneficial Holder Ballot without this box in Item 3 checked, or if the Beneficial Holder does not submit a ballot by the Voting Deadline, the Beneficial Holder will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law. If the Beneficial Holder voted to accept the Plan in Item 2 of the Beneficial Holder Ballot, (a) the Beneficial Holder will be deemed to consent to the releases contained in Article VIII.D of the Plan to the fullest extent permitted by applicable law and (b) if the Beneficial Holder checked the box in Item 3 of the Beneficial Holder Ballot, its election not to grant the releases will not be counted. The release, injunction, and exculpation provisions set forth in Article VIII.C, D, E, and F of the Plan are set forth in **Exhibit 1** attached hereto.

**Item 5.**         **Certifications**

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.   it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Existing Parent Equity Interests listed in Item 2 above;

b.   it has received a completed and signed Beneficial Holder Ballot (or other accepted and customary method of communicating a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

c.   it is the registered Holder of all the Existing Parent Equity Interests listed in Item 2 above being voted, or it has been authorized by each Beneficial Holder of the Existing Parent Equity Interests listed in Item 2 above to vote on the Plan;

d.   no other Master Ballots with respect to the same Existing Parent Equity Interests identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Existing Parent Equity Interests, then any such earlier received Master Ballots are hereby revoked;

e.   it has properly disclosed: (i) the number of Beneficial Holders of Existing Parent Equity Interests who completed the Beneficial Holder Ballots; (ii) the respective amounts of the Existing Parent Equity Interests owned, as the case may be, by each Beneficial Holder of the Existing Parent Equity Interests who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder of Existing Parent Equity Interests' respective vote concerning the Plan; (iv) each such Beneficial Holder of Existing Parent Equity Interests' certification as to other Existing Parent Equity Interests; and (v) the customer account or other identification number for each such Beneficial Holder of Existing Parent Equity Interests; and

f.    it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders of Existing Parent Equity Interests (whether properly completed or defective) for at least one year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

Name of Nominee: _____

(Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Nominee (if applicable):

_____

(Print or Type)

Signature: _____

Name of Signatory: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED VIA FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY, OR VIA ELECTRONIC MAIL SERVICE TO:**

**Diamond Ballot Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165
diamondballots@primeclerk.com**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE MARCH 30, 2021 AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES**

**TRANSMITTED BY THIS MASTER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**
**INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT**

1.  The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement. Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3.  You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Existing Parent Equity Interests and take any action required to enable each such Beneficial Holder to vote timely the Existing Parent Equity Interests that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. Any Beneficial Holder Ballot returned to you by a Beneficial Holder of Existing Parent Equity Interests shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by <u>March 30, 2021, at 4:00 p.m.</u>, prevailing Central Time or otherwise validate the Master Ballot in a manner acceptable to the Solicitation Agent.

4.  If you are transmitting the votes of any Beneficial Holder of Existing Parent Equity Interests other than yourself, you may either:

    a.  "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Existing Parent Equity Interests for voting within five Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package. A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the amount of Existing Parent Equity Interests held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder. The

7

Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent.  A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; or

b.    Within five Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Existing Parent Equity Interests for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee.  The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.

5.    With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan.  You may be ordered to produce the Beneficial Holder Ballots (or evidence of the vote transmitted to you) to the Debtors or the Bankruptcy Court.

(i)    The Master Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is March 30, 2021, at 4:00 p.m., prevailing Central Time.**

(ii)    If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors.  Additionally, **the following Master Ballots will not be counted:**

a.    any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Existing Parent Equity Interests;

b.    any Master Ballot cast by a Party that does not hold an Interest in a Class that is entitled to vote on the Plan;

c.    any Master Ballot sent by facsimile or any electronic means other than electronic mail;

       d.       any unsigned Master Ballot (for the avoidance of doubt, Master Ballots validly submitted via electronic mail will be deemed signed);

       e.       any Master Ballot that does not contain an original signature; provided, *however*, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;

       f.       any Master Ballot not marked to accept or reject the Plan; and/or

       g.       any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

8.       The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot.  In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

9.       If a Beneficial Holder or Nominee holds an Interest in a Voting Class against multiple Debtors, a vote on their Beneficial Holder Ballot will apply to all applicable Classes and Debtors against whom such Beneficial Holder or Nominee has such Interest, as applicable, in that Voting Class.

10.       If multiple Master Ballots are received from the same Nominee with respect to the same Existing Parent Equity Interests voted on a Beneficial Holder Ballot prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

11.       The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or Interest or (b) an assertion or admission of a Claim or Interest.

12.       **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.       If you are both the Nominee and the Beneficial Holder of any Existing Parent Equity Interests, and you wish to vote such Existing Parent Equity Interests, you may vote such Existing Parent Equity Interests where indicated on the Master Ballot for such Existing Parent Equity Interests and you must vote all of your Existing Parent Equity Interests to either accept or reject the Plan and may not split your vote.

14.       The following additional rules shall apply to Master Ballots:

a.   Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in Existing Parent Equity Interests as of the Voting Record Date, as evidenced by the record and depository listings.

b.   Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Existing Parent Equity Interests held by such Nominee;

c.   To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

d.   To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Existing Parent Equity Interests; and

e.   For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the amount relating to its holdings in that particular account, although the Solicitation Agent may be asked to adjust such amount to reflect the Existing Parent Equity Interests amount.

## PLEASE MAIL YOUR MASTER BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**DOMESTIC: (877) 720-6570**
**INTERNATIONAL: (929) 955-3417**

**OR EMAIL DIAMONDBALLOTS@PRIMECLERK.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 30, 2021, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

---

*[Remainder of page intentionally left blank]*

**<u>Exhibit 1</u>**

**Plan Injunction, Releases, and Exculpation**

[Exhibit E-7 to be attached here]

**Exhibit E-7**

**Exhibit 1 to Ballots**

<u>**Exhibit 1**</u>

***Plan Injunction, Releases, and Exculpation***

If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the exculpation and injunction provisions set forth in Articles VIII.E and F of the Plan, respectively.  If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan and do not check the box in Item 3 of your Ballot, or (iii) vote to reject the Plan and do not check the box in Item 3 of your Ballot, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions of the Plan.  Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**Article VIII.C**          <u>**Debtor Release**</u>

Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's Representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual relationship between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract, instrument, release, or other agreement

or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the New Warrants, or the Plan, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, or (d) any Preserved Causes of Action set forth in the Plan Supplement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtor Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases.

**Article VIII.D**　　　**Third-Party Release**

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code , in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever, released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management,

ownership, assets, or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual relationship between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Rights Offerings, the Private Placements, the Exit Facilities, the Backstop Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the New Warrants, the Plan or the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, (d) the rights of any current employee of the Debtors under any employment agreement or plan, or (e) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Third-Party Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases.

**Article VIII.E**          <u>Exculpation</u>

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement and related prepetition transactions (including any draws under or Claims or Causes of Action related to the RCF Credit Agreement), the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the Plan, the Plan Supplement, the New Warrants, or any transaction related to the Restructuring, any contract, instrument, release or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with applicable Law with respect to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**Article VIII.F.**          <u>Injunction</u>

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to the Plan.

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

1.  commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

2.  enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

3.  creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

4.  asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and

5.  commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan or the Confirmation Order.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan, the Confirmation Order or under any other Restructuring Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan and the Confirmation Order from bringing an action to enforce the terms of the Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan and the Confirmation Order.  The injunction in the Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

Relevant Definitions Related to Release, Exculpation and Injunction Provisions

"Exculpated Parties" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Committee and its members; (d) the parties to the Plan Support Agreement; and (e) the Senior Notes Trustee (solely to the extent acting in the capacity as Disbursing Agent), and (f) with respect to each of the foregoing Persons in clauses (a) through (e), each of their current and former Affiliates; and (f) with respect to each of the foregoing Persons in clauses (a) through (f), such Person's predecessors, successors, assigns, subsidiaries, Affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants,

Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"Released Parties" means, each of and collectively, (a) the Debtors and the Reorganized Debtors, (b) the Consenting Stakeholders, (c) the Ad Hoc Group and each of its members, (d) the Senior Notes Trustee, (e) the Financing Parties, (f) the RCF Agent and the RCF Lenders, (g) the Exit Agents, the Exit Revolving Credit Facility Lenders, the Exit Term Loan Lenders and the Exit Noteholders; (h) any Releasing Party, (i) the Committee and each of its members, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their current and former Affiliates, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), such Person's predecessors, successors, assigns, subsidiaries, current and former Affiliates, current and former officers and directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, managed accounts or funds, management companies, fund advisors, financial advisors, advisory board members, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees and any and all other persons or entities that may purport to assert any Cause of Action derivatively, by or through the foregoing, in each case in their capacity as such.

"Releasing Parties" means, collectively, (a) the Holders of all Claims or Interests who vote to accept the Plan, (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited, or that otherwise receive notice of the opportunity to opt out of granting the releases set forth in the Plan, that vote to reject or abstain from voting and do not opt out of granting the releases under the Plan, (c) the Holders of all Claims or Interests that are conclusively presumed to accept, and do not opt out of granting the releases under the Plan, (d) the Holders of all Claims or Interests who are deemed to reject the Plan and do not opt out of granting the releases under the Plan, (e) the Consenting Stakeholders, (f) the Ad Hoc Group and each of its members, (g) the Senior Notes Trustee, (h) the Financing Parties, (i) the RCF Agent and each of the RCF Lenders, (j) the Committee and each of its members (solely in their capacity as such), (k) any Released Party, (l) with respect to each of the foregoing Persons, in clauses (a) through (k), each of their current and former Affiliates, and (m) with respect to each of the foregoing Persons in clauses (a) through (l), such Person's predecessors, successors, assigns, subsidiaries, current and former Affiliates, current and former officers and directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both limited and general partners), managers, employees, agents, managed accounts or funds, management companies, fund advisors, financial advisors, advisory board members, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, and any and all other persons or entities that may purport to assert any Cause of Action derivatively, by or through the foregoing in each case in their capacity as such.

**<u>Exhibit F</u>**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| | ) Case No. 20-32307 (DRJ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) |
| | ) |

**NOTICE OF NON-VOTING STATUS AND RELEASE OPT-OUT FORM**

**PLEASE TAKE NOTICE THAT:**

1.      On [●], 2021, Diamond Offshore Drilling, Inc. and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Plan"), and a disclosure statement for the Plan [Docket No. [●]] (as amended, modified, or supplemented from time to time, the "Disclosure Statement")[2] pursuant to section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code [Docket No. [●]].

2.      **You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a holder of: Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), or Class 5 (General Unsecured Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are deemed to have accepted the Plan and are not entitled to vote on the Plan.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

1

3.      Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' solicitation agent, Prime Clerk LLC (the "Solicitation Agent"), at https://cases.primeclerk.com/diamond.   Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (877) 720-6570 (International) or (929) 955-3417 (Domestic), or sending an electronic mail message to the Solicitation Agent at diamondinfo@primeclerk.com.

4.      **AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN.   YOU MAY ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN BY COMPLETING AND SUBMITTING THE OPT-OUT FORM ATTACHED HERETO AS ANNEX A BY THE OBJECTION DEADLINE. THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS SET FORTH IN ARTICLE VIII.D, E, AND F OF THE PLAN, WHICH PROVISIONS ARE SET FORTH IN EXHIBIT 1 ATTACHED HERETO.**

5.      **ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN BY SUBMITTING THE ATTACHED OPT-OUT FORM AS INSTRUCTED THEREIN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.   BY ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

6.      A hearing to consider confirmation of the Plan, and any objections thereto, will be held on **April 8, 2021, at 9:00 a.m. (prevailing Central Time)** before the Honorable David R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002, or as soon thereafter as counsel may be heard (the "Confirmation Hearing").[3]

7.      Any objections to confirmation of the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the applicable Bankruptcy Rules and Local Rules; and (e) be filed with the Bankruptcy Court, together

---

[3]     Pursuant to the Protocol for Emergency Public Health or Safety Conditions (adopted by General Order 2020-4 and thereafter amended and extended from time to time), all hearings are currently being held by video/audio platforms.   Parties should consult the Court's website at www.txs.uscourts.gov to confirm the method and procedures for appearance at any hearing.

with proof of service, and served on the following parties so as to be received by **no later than March 30, 2021 at 4:00 p.m. (prevailing Central Time)** (the "Objection Deadline"):

    a.    the Debtors, 15415 Katy Freeway, Houston, Texas 77094 (Attn: General Counsel);

    b.    counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Robert A. Britton, and Christopher Hopkins), and (b) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002 (Attn: John F. Higgins, Eric M. English, and M. Shane Johnson);

    c.    counsel to the Ad Hoc Group of Senior Noteholders, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Dennis F. Dunne, Tyson M. Lomazow, and Ryan A. Berger);

    d.    counsel to Wells Fargo Bank, National Association, as Prepetition RCF Agent, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Kate Day and William A. (Trey) Wood III);

    e.    counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street., Suite 1800, Dallas, Texas 75201 (Attn: Marty L. Brimmage, Jr.) and One Bryant Park, New York, New York 10036 (Attn: Ira S. Dizengoff and Philip C. Dublin); and

    f.    the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002 (Attn: Hector Duran, Esq.).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE OF NON-VOTING STATUS, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN ARTICLE VIII OF THE PLAN.**

*[Remainder of page intentionally left blank]*

Dated:      [●], 2021

By: _____

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com

*Co-Counsel to the Debtors and the Debtors-in-Possession*

– and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
Shamara R. James (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
pbasta@paulweiss.com
rbritton@paulweiss.com
chopkins@paulweiss.com
anofzinger@paulweiss.com
sjames@paulweiss.com

*Counsel to the Debtors and the Debtors-in-Possession*

## Exhibit 1

*Plan Injunction, Releases, and Exculpation*

**If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the exculpation and injunction provisions set forth in Articles VIII.E and F of the Plan, respectively. Pursuant to the Plan, as a Holder of Claims who has been given notice of the opportunity to opt out of granting the releases set forth in Article VIII.D of the Plan, if you do not timely opt out, you shall be deemed to have consented to the release provisions set forth in Article VIII.D of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions of the Plan. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.**

**Article VIII.C          Debtor Release**

**Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's Representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual relationship between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit**

**Facilities, the New Warrants, or the Plan, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.**

**Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, or (d) any Preserved Causes of Action set forth in the Plan Supplement.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtor Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Debtors, the Reorganized Debtors, or the  Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases.**

**Article VIII.D          Third-Party Release**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code , in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever, released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual relationship between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between**

2

or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Rights Offerings, the Private Placements, the Exit Facilities, the Backstop Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the New Warrants, the Plan or the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, (d) the rights of any current employee of the Debtors under any employment agreement or plan, or (e) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Third-Party Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases.

## Article VIII.E          Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement and related prepetition transactions (including any draws under or Claims or Causes of Action related to the RCF Credit Agreement), the Disclosure Statement,

the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the Plan, the Plan Supplement, the New Warrants, or any transaction related to the Restructuring, any contract, instrument, release or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable Law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with applicable Law with respect to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**Article VIII.F.** **Injunction**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to the Plan.

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to Article VIII of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

1. commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

2. enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

3.  **creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;**

4.  **asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and**

5.  **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan or the Confirmation Order.**

**Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan, the Confirmation Order or under any other Restructuring Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan and the Confirmation Order from bringing an action to enforce the terms of the Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement the Plan and the Confirmation Order.  The injunction in the Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.**

<ins>Relevant Definitions Related to Release, Exculpation and Injunction Provisions</ins>

"<ins>Exculpated Parties</ins>" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Committee and its members; (d) the parties to the Plan Support Agreement; and (e) the Senior Notes Trustee (solely to the extent acting in the capacity as Disbursing Agent), and (f) with respect to each of the foregoing Persons in clauses (a) through (e), each of their current and former Affiliates; and (f) with respect to each of the foregoing Persons in clauses (a) through (f), such Person's predecessors, successors, assigns, subsidiaries, Affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such.

"<ins>Released Parties</ins>" means, each of and collectively, (a) the Debtors and the Reorganized Debtors, (b) the Consenting Stakeholders, (c) the Ad Hoc Group and each of its members, (d) the Senior Notes Trustee, (e) the Financing Parties, (f) the RCF Agent and the RCF Lenders, (g) the Exit Agents, the Exit Revolving Credit Facility Lenders, the Exit Term Loan Lenders and the Exit Noteholders; (h) any Releasing Party, (i) the Committee and each of its members, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their current and former Affiliates, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), such Person's predecessors, successors,

assigns, subsidiaries, current and former Affiliates, current and former officers and directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, managed accounts or funds, management companies, fund advisors, financial advisors, advisory board members, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees and any and all other persons or entities that may purport to assert any Cause of Action derivatively, by or through the foregoing, in each case in their capacity as such.

"Releasing Parties" means, collectively, (a) the Holders of all Claims or Interests who vote to accept the Plan, (b) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited, or that otherwise receive notice of the opportunity to opt out of granting the releases set forth in the Plan, that vote to reject or abstain from voting and do not opt out of granting the releases under the Plan, (c) the Holders of all Claims or Interests that are conclusively presumed to accept, and do not opt out of granting the releases under the Plan, (d) the Holders of all Claims or Interests who are deemed to reject the Plan and do not opt out of granting the releases under the Plan, (e) the Consenting Stakeholders, (f) the Ad Hoc Group and each of its members, (g) the Senior Notes Trustee, (h) the Financing Parties, (i) the RCF Agent and each of the RCF Lenders, (j) the Committee and each of its members (solely in their capacity as such), (k) any Released Party, (l) with respect to each of the foregoing Persons, in clauses (a) through (k), each of their current and former Affiliates, and (m) with respect to each of the foregoing Persons in clauses (a) through (l), such Person's predecessors, successors, assigns, subsidiaries, current and former Affiliates, current and former officers and directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both limited and general partners), managers, employees, agents, managed accounts or funds, management companies, fund advisors, financial advisors, advisory board members, attorneys, accountants, investment bankers, consultants, Representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, and any and all other persons or entities that may purport to assert any Cause of Action derivatively, by or through the foregoing in each case in their capacity as such.

## Annex A

**Third-Party Release Opt-Out Form**

### Third-Party Release Opt-Out Form

AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN SET FORTH BELOW.

IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND <u>RETURN THIS FORM</u> (THIS "OPT-OUT FORM") TO THE DEBTORS' SOLICITATION AGENT SO THAT IT IS <u>*ACTUALLY RECEIVED*</u> BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON MARCH 30, 2021 OR TIMELY FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO YOUR INCLUSION AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.D OF THE PLAN. IF YOU FAIL TO TIMELY SUBMIT THIS FORM, OR IF YOU SUBMIT THIS FORM WITHOUT CHECKING THE BOX BELOW AND FAIL TO TIMELY FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO YOUR INCLUSION AS A RELEASING PARTY, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.**

<u>**Article VIII.D of the Plan contains the following provision**</u>**:**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable Law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code , in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally and forever, released and discharged by each Releasing Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof, including any draws under or any Claims or Causes of Action related to the RCF Credit Agreement), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual relationship between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan Support Agreement, the Disclosure Statement, the Rights Offerings, the Private Placements, the Exit Facilities, the Backstop Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the New Warrants, or any aspect of the Restructuring, including any contract,**

2

instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the Backstop Agreement, the Rights Offerings, the Private Placements, the Exit Facilities, the New Warrants, the Plan or the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, any action or actions taken in furtherance of or consistent with the administration of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained in the Plan to the contrary, the foregoing release does not release (a) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, including the Exit Facilities Documents, (b) any Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, solely to the extent as determined by a final order of a court of competent jurisdiction, (c) the rights of Holders of Allowed Claims or Interests to receive distributions under the Plan, (d) the rights of any current employee of the Debtors under any employment agreement or plan, or (e) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing this Plan; (b) a good-faith settlement and compromise of the Claims released by the Third-Party Releases; (c) in the best interest of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases.

Item 1.  **Opt Out**.  By checking the box below, the undersigned holder of the Claims identified in Item 2 below, having received notice of the opportunity to opt out of granting the releases contained in Article VIII.D of the Plan, elects to opt out of such releases:



☐ **OPT OUT of the Third-Party Release**

Item 2.  **Amount of Claim**.  The undersigned certifies that it is the holder of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and/or Class 5 (General Unsecured Claims), as indicated below:

| Class 1 (Other Priority Claims) | Amount $ |
| Class 2 (Other Secured Claims) | Amount $ |
| Class 5 (General Unsecured Claims) | Amount $ |

**Item 3**. **Acknowledgments**. By signing this Opt-Out Form, the undersigned certifies that the undersigned has the power and authority to elect whether to grant the releases contained in Article VIII.D of the Plan with respect to the Claims identified in Item 2 above and has elected not to be a Releasing Party under the Plan.

Name of Holder _____

Signature_____

Title (if applicable) _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number_____

Email Address_____

Date Completed_____

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN IT (WITH AN ORIGINAL SIGNATURE) <u>PROMPTLY</u>, AND IN ANY EVENT <u>NO LATER THAN 4:00 P.M. (PREVAILING CENTRAL TIME) ON MARCH 30, 2021</u>, VIA FIRST CLASS MAIL (OR THE ENCLOSED REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**Diamond Opt-Out Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY  10165**

*If you would like to coordinate hand delivery of your Opt-Out Form, please send an email to diamondballots@primeclerk.com and provide the anticipated date and time of your delivery.*

**<u>Exhibit G</u>**

**Disputed Claim Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| DIAMOND OFFSHORE DRILLING, INC., *et al.*,[1] | ) Case No. 20-32307 (DRJ) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

## NON-VOTING STATUS NOTICE
## WITH RESPECT TO HOLDERS OF DISPUTED CLAIMS

**PLEASE TAKE NOTICE THAT:**

1.　　On [●], 2021, the United States Bankruptcy Court for the Southern District of Texas (the <u>Bankruptcy Court</u>") entered the *Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures and Solicitation Packages, (C) Scheduling a Hearing on Confirmation of the Plan, (D) Establishing Procedures for Objecting to the Plan, (E) Approving the Form, Manner, and Sufficiency of Notice of the Confirmation Hearing, and (F) Granting Related Relief* [Docket No. [●]] (the "<u>Disclosure Statement Order</u>") that, among other things, (a) approved the adequacy of the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as may be amended from time to time, including all exhibits and supplements thereto, the "<u>Disclosure Statement</u>") and (b) authorized the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") to solicit acceptances or rejections of the *Second Amended Joint Chapter 11 Plan of Reorganization of Diamond Offshore Drilling, Inc. and Its Debtor Affiliates* [Docket No. [●]] (as may be amended from time to time, including all exhibits and supplements thereto, the "<u>Plan</u>") from the Holders of Claims and/or Interests who are entitled to vote on the Plan.[2]

---

[1]　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Diamond Offshore Drilling, Inc. (1760), Diamond Offshore International Limited (4671), Diamond Offshore Finance Company (0712), Diamond Offshore General Company (0474), Diamond Offshore Company (3301), Diamond Offshore Drilling (UK) Limited (1866), Diamond Offshore Services Company (3352), Diamond Offshore Limited (4648), Diamond Rig Investments Limited (7975), Diamond Offshore Development Company (9626), Diamond Offshore Management Company (0049), Diamond Offshore (Brazil) L.L.C. (9572), Diamond Offshore Holding, L.L.C. (4624), Arethusa Off-Shore Company (5319), Diamond Foreign Asset Company (1496).  The Debtors' primary headquarters and mailing address is 15415 Katy Freeway, Houston, TX 77094.

[2]　Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Disclosure Statement Order, as applicable.

2.      You are receiving this notice (this "Notice") because your claim is a Disputed Claim (as defined below) and you are accordingly not entitled to vote on the Plan. Accordingly, the Debtors have provided you with a copy of (a) this Notice, and (b) the Confirmation Hearing notice for informational purposes.

3.      Subject to the procedures set forth in the Disclosure Statement Order, a Holder of a Claim not entitled to vote on the Plan because the disputed portion of their Claim is subject to a pending objection (each such claim, a "Disputed Claim") shall be permitted to vote such a Claim (or to vote such a Claim in an amount other than the amount set forth in the Schedules) only if one of the following shall have occurred with respect to such claim (a "Voting Resolution Event") on or before March 23, 2021 (the "Voting Resolution Event Deadline"):

a.      Agreement Between the Parties.   A stipulation or other agreement is executed between the holder of such Claim and the Debtors allowing the holder of such Claim to vote such Claim in an agreed upon amount.

b.      Bankruptcy Rule 3018(a) Order.   A creditor files with the Court a motion pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018(a) Motion") on or before the Voting Resolution Event Deadline seeking temporary Allowance of its Claim for voting purposes in the amount other than set forth in the Schedules or in response to an objection filed by the Debtors that is sustained by the Court after notice and a hearing.

Any Rule 3018(a) Motion must: (i) be made in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) set forth the name of the party asserting the Rule 3018(a) Motion, (iv) state with particularity the legal and factual bases for the Rule 3018(a) Motion, (v) be set for hearing at the Confirmation Hearing, and (vi) be served by personal service, overnight delivery, first class mail, or facsimile so as to be received by the Notice Parties no later than the Voting Resolution Event Deadline.

In the event that the Debtors and such party are unable to resolve any issues raised by the Rule 3018(a) Motion before submitting their voting certification, (i) the Debtors may object to the Rule 3018(a) Motion before the Confirmation Hearing; and (ii) the Solicitation Agent (as defined below) shall tabulate the vote in the amount as directed by the Debtors and shall include in the voting certification representations that such vote was subject to a Rule 3018(a) Motion and whether including such Ballot in the amount sought by the party in the Rule 3018(a) Motion would change the particular Voting Class's acceptance or rejection of the Plan.   The Court then shall determine at the Confirmation Hearing whether the Ballot should be counted as a vote on the Plan and in what amount.

c.      Other Order of the Court.   The Court otherwise orders the allowance of such Claim for purposes of voting to accept or reject the Plan.

4.      The Debtors will provide a party that is permitted to provisionally vote its Claim on account of the timely occurrence of a Voting Resolution Event with an appropriate Ballot

2

and a pre-addressed, postage prepaid envelope within one business day after the Voting Resolution Event Deadline.  Such parties must then return a completed, properly exercised Ballot to the Solicitation Agent on or before the Voting Deadline (unless the Debtors extend the deadline in their sole discretion to facilitate a reasonable opportunity for such creditor to vote upon the Plan).

5.     Copies of the Disclosure Statement, the Plan, the Disclosure Statement Order, and all documents filed in the Chapter 11 Cases may be accessed through the Debtors' case website, https://cases.primeclerk.com/diamond.  If you desire paper copies, you may request paper copies from the Debtors' claims, noticing, and solicitation Agent, Prime Clerk LLC (the "Solicitation Agent") free of charge by: (a) visiting the Debtors' case website at https://cases.primeclerk.com/diamond, (b) writing to Diamond Ballot Processing c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, or (c) calling the Debtors' restructuring hotline at (929) 955-3417 (Domestic) or (877) 720-6570 (International).

*[Remainder of page intentionally left blank]*

Dated:      [●], 2021

By: _____

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone:      (713) 226-6000
Facsimile:      (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com

*Co-Counsel to the Debtors and the Debtors-in-Possession*

– and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Alice Nofzinger (admitted *pro hac vice*)
Shamara R. James (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
pbasta@paulweiss.com
rbritton@paulweiss.com
chopkins@paulweiss.com
anofzinger@paulweiss.com
sjames@paulweiss.com

*Counsel to the Debtors and the Debtors-in-Possession*